[No. 3122-1.   Division One.   August 2, 1976.]

INSURANCE MANAGEMENT, INC., ET AL, *Respondents*, v. DENNIS DEANE GUPTILL, ET AL, *Defendants*, MICHAEL McCONNELL, *Appellant*, PREMIUM BUDGET COMPANY, INC., *Respondent*.

*Robbins, Merrick & Kraft* and *Thomas J. Kraft*, for appellant.

*Murray, Dunham & Waitt, Wayne Murray, Beaudry, Neeley & Herman*, and *M. Gerald Herman*, for respondents.

FARRIS, J.—Michael McConnell appeals from a determination that a certain automobile insurance policy issued to Dennis Guptill had been canceled prior to the date of an automobile/motorcycle collision involving Guptill and McConnell. The appeal questions whether Guptill was given adequate notice of cancellation. The trial court found adequate notice. We affirm.

At all times pertinent hereto, Insurance Management, Inc., was a duly licensed general agent for the Federated American Insurance Company and had the authority to issue, cancel, and collect premiums for insurance policies on behalf of Federated American. The Federated American policy in question was issued to Dennis Guptill by Insurance Management, Inc., and/or Insurance Management Underwriters of the Federated American Insurance Company. In pertinent part, the policy provided coverage (1) for bodily injury liability subject to limits of $15,000 per person per accident and $30,000 per accident and (2) for property damage liability subject to a limit of $5,000 per accident. The policy was issued for 1 year from July 27, 1970, to July 27, 1971, and specified a total premium of $455. Guptill financed the premium through the Premium Budget Company, Inc., under an arrangement whereby he made a down payment of $113.75 and was required to make eight monthly payments of $46.75 each. The monthly payments were due on the 27th of each month with the first one due on August 27, 1970.

Guptill failed to make the first, third, and fourth monthly payments when due. However, he was able to retain his insurance coverage by paying the required amounts after receiving notice of the delinquencies through the mail from Premium Budget.

When the fifth monthly payment was not made on December 27, 1970, Premium Budget notified Guptill by mail

that his insurance would be canceled unless payment was received by January 8, 1971. When the payment was not received on January 8, Premium Budget notified Insurance Management which then notified Guptill by mail that his insurance was canceled effective January 19, 1971. Insurance Management also mailed notification of the cancellation of Guptill's insurance to Hall-Conway-Jackson (Guptill's insurance broker) and the office of financial responsibility of the Department of Motor Vehicles. However, as a result of oral arrangements made by Guptill with Premium Budget, the cancellation was rescinded and the policy reinstated on January 13, 1971. Notice of the rescission and reinstatement was sent to Guptill, Hall-Conway-Jackson, and the Department of Motor Vehicles.

When the sixth monthly payment was not made on January 27, 1971, Premium Budget notified Guptill by mail that his insurance would be canceled unless payment was received by February 7, 1971. On February 17, 1971, Premium Budget received a $30 cash payment from Guptill which was applied to the past due installment for December 27, 1970, leaving $16.75 due for December of 1970 and $46.75 due for January of 1971. Guptill made no further payments to Premium Budget.

The seventh monthly payment fell due on February 27, 1971. However, since that was a Saturday, when the payment was not made on February 26, 1971, Premium Budget notified Guptill by mail that his insurance would be canceled unless payment for the past due installments was received by March 7, 1971. Since March 7 was a Sunday, when the payment was not received by Monday, March 8, Premium Budget asked Insurance Management to cancel Guptill's policy effective March 18, 1971. Insurance Management then mailed notices on March 8 to (1) Guptill informing him that the policy was canceled effective March 18, 1971, (2) Hall-Conway-Jackson informing them that the policy was canceled effective March 18, 1971, and (3) the Department of Motor Vehicles informing it that the policy was canceled effective March 19, 1971. Thereafter, the un-

earned premium of $150 was returned to Premium Budget by Insurance Management. However, since Guptill owed Premium Budget $157 as of March 19, no return was made directly to him.

On April 27, 1971, Guptill was involved in an automobile/motorcycle collision in which Michael McConnell, Douglas MacDonald, and Robert Jared sustained injuries and damages as a result of Guptill's alleged negligence. Insurance Management and Federated American brought this action to obtain a declaratory judgment that no coverage existed under the policy. The trial court ruled that the policy had been cancelled effective March 18, 1971, and that no coverage existed under it for any liability arising from the accident. McConnell appeals.

■ McConnell submits that the trial court erred in finding that all the various notices involved herein were actually sent and received. He relies upon the rule of *Matsko v. Dally*, 49 Wn.2d 370, 376-77, 301 P.2d 1074 (1956), which provides that proof of mailing and the presumption of receipt can arise from a showing of (1) an office mailing custom and (2) compliance therewith in the specific instance. *See also Meyers v. Meyers*, 81 Wn.2d 533, 540 n.4, 503 P.2d 59, 59 A.L.R.3d 1318 (1972); *Automat Co. v. Yakima County*, 6 Wn. App. 991, 995, 497 P.2d 617 (1972); 5 R. Meisenholder, Wash. Prac. § 7, at 35 (1965). He argues that the compliance aspect of the *Matsko* rule was not satisfied here because the particular employees who placed the notices in the mail were not called to testify. We recognize the rule and appreciate its application where proof of mailing and receipt must rest entirely upon a showing of office custom and compliance therewith, but here there was testimony from several witnesses, including Guptill, that various notices were actually received. Whether Guptill received the crucial notices required by RCW 48.56.110 is a question of fact which must be determined from all of the evidence presented. Here, there is substantial evidence which supports the findings entered by the trial court. They will not be disturbed.

McConnell argues that RCW 48.56.110[1] was not complied with in several respects. He initially contends that even assuming that the February 26, 1971, notice of intent to cancel was actually sent by Premium Budget and received by Guptill, it was ineffective because it failed to provide the 10 days' written notice required by RCW 48.56.110(2). The record reflects that (1) the payment for February was due on Saturday, the 27th, (2) the notice was mailed on Friday, the 26th, and (3) the notice stated that the policy would be canceled unless payment was received by Sunday, March 7. Even assuming, without deciding, that the time period for the notice began to run from Saturday, the 27th, because (1) that was the date on which Guptill defaulted on the February payment, and (2) Premium Budget's acceptance of the $30 partial payment on February 17 prevented it from taking any action regarding cancellation

---

[1]"Cancellation of insurance contract. (1) When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be canceled by the premium finance company unless such cancellation is effectuated in accordance with this section.

"(2) Not less than ten days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such ten day period.

"(3) After expiration of such ten day period, the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a notice of cancellation, and the insurance contract shall be canceled as if such notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a notice of cancellation to the insured at his last known address.

"(4) All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under the provisions of this section. The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation."

until Guptill again defaulted on a payment, we reject the argument that the notice was ineffective.

The computation of the 10-day period is controlled by RCW 1.12.040, which provides:

> Computation of time. The time within which an act is to be done, as herein provided, shall be computed by excluding the first day, and including the last, unless the last day is a holiday or Sunday, and then it is also excluded.

Further, even where a notice specifies a shorter period than that required, it is not ineffective, since in this jurisdiction the notice is treated as if it stated the proper date. *See Ralston v. Royal Ins. Co.,* 79 Wash. 557, 561-62, 140 P. 552 (1914). *See also* 7 D. Blashfield, *Automobile Law and Practice* § 293.9, at 269 (3d ed. 1966). Starting from the 27th and excluding it as the first day, and extending the effective date in accordance with *Ralston,* the notice of intent to cancel was effective on March 10, 1971. Guptill failed to cure the defaults prior to March 10 or at any time thereafter. We recognize that the courts of New York hold that under its premium finance law a short notice is no notice at all. *See, e.g., Gordon v. Nationwide Mut. Ins. Co.,* 30 N.Y.2d 427, 285 N.E.2d 849, 334 N.Y.S.2d 601, 604-05 (1972), *cert. denied,* 410 U.S. 931, 35 L. Ed. 2d 593, 93 S. Ct. 1374 (1973); *Johnson v. General Mut. Ins. Co.,* 24 N.Y.2d 42, 246 N.E.2d 713, 298 N.Y.S.2d 937, 941 (1969); *Cannon v. Merchants Mut. Ins. Co.,* 35 Misc. 2d 625, 230 N.Y.S.2d 282 (1962). But there is a difference between the New York statute and RCW 48.56.110. Under the New York statute, the process of canceling the policy begins before, and can be effective simultaneously with, the expiration of the notice period. Under RCW 48.56.110(2), the premium finance company must first notify the insured of its intent to cancel and only after the notice period has expired can the premium finance company give notice to the insurer regarding cancellation pursuant to RCW 48.56.110(3) and the insurer give any notice required to governmental agencies, mortgagees, or other third parties pursuant to RCW 48.56.110(4). We therefore do not follow the New York decisions.

McConnell next argues that the cancellation of Guptill's insurance was ineffective because Premium Budget did not mail a notice of cancellation to the insurer and the insured as required by RCW 48.56.110(3). We reject the argument. The record indicates that Premium Budget sent a notice of cancellation to Insurance Management. Since Insurance Management was the general agent for American Federated, notice to it was notice to the insurer. Premium Budget did not mail a notice of cancellation to Guptill as required by RCW 48.56.110(3). However, Guptill received notice of the cancellation from Insurance Management. Such notice here was sufficient for the purposes of RCW 48.56.110(3).

McConnell submits that because (1) the addresses of Premium Budget and Insurance Management were the same, (2) the same person was the majority shareholder in each corporation, and (3) that same person was also on the board of directors of each corporation, a conflict of interest existed between the two companies which defeats the cancellation. *See Maryland Cas. Co. v. Conner*, 200 F. Supp. 647, 652-53 (E.D.S.C. 1961). *See also Clark v. Employers Mut. Cas. Co.*, 90 F.2d 667, 671, 115 A.L.R. 1204 (8th Cir. 1937). We reject the argument. The trial court found:

> Though there were common directors and officers between Premium Budget Company, Inc. and Insurance Management, Inc. the two companies were distinct and separate entities and had separate and different sets of employees, and there was absolutely no testimony giving any evidence of any conflict of interest existing between the two.

Finding of fact No. 4. The finding is supported by substantial evidence; it will not be disturbed.

Finally, McConnell argues that because American Federated had already received its premium in full it had no right to cancel the policy. The argument is without merit.

Affirmed.

SWANSON, J., and JOHNSON, J. Pro Tem., concur.