**INAC CORP., Appellant,**

v.

**UNDERWRITERS AT LLOYD'S,** Houstoun Woodward Eason Gentle Tomforde Anderson, Inc., and Gary D. "Bo" Burris, Appellees.

No. 14–00–00106–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 26, 2001.

Rehearing Overruled Aug. 23, 2001.

---

9. Tex. Penal Code Ann. § 19.03(a)(2) (Vernon 1994).

Robert I. Howell, Bob H. Shannon, David T. Arlington, Austin, for appellants.

Gray H. Miller, George Jackson, Houston, for appellees.

Panel consists of Justices HUDSON and SEYMORE and Senior Chief Justice PAUL C. MURPHY.*

## OPINION

PAUL C. MURPHY, Senior Chief Justice (Assigned).

The main issue in this case is whether Appellant INAC Corp. ("INAC") complied with TEX. INS.CODE ANN. art. 24.17(d) (Vernon Supp.2000) when it sent notice of cancellation to Houstoun Woodward Eason Gentle Tomforde Anderson, Inc. d/b/a Insurance Alliance ("Insurance Alliance")—a company that was authorized by the Underwriter appellees to act as their agent for receiving notices of cancellation from the insured—Midcon Offshore, Inc. ("Midcon"). INAC appeals from a summary judgment denying recovery of unearned premiums allegedly due upon cancellation of two insurance policies. The trial court

* Senior Chief Justice Murphy sitting by assignment.

granted motions for summary judgment in favor of appellees—the Underwriters, Insurance Alliance, and Gary D. "Bo" Burris. The trial court denied INAC's motions for summary judgment against the appellees. We hold that the trial court should have denied the Underwriters' motion for summary judgment against INAC because TEX. INS.CODE ANN. art. 24.17(d) allowed INAC to mail notice of cancellation to the Underwriters in care of Insurance Alliance; however, we hold that the trial court properly denied INAC's motion for summary judgment against the Underwriters because INAC did not prove that it was entitled to judgment as a matter of law on its claims for unearned premiums. Therefore, we reverse that portion of the trial court's judgment granting the Underwriters' motion for summary judgment against INAC. We also sever INAC's claims against the Underwriters and remand these claims to the trial court for further proceedings. Because the trial court properly granted the motion for summary judgment filed by Insurance Alliance and Burris, we affirm the portion of the trial court's judgment dismissing INAC's claims against these parties.

## Background

INAC provides financing to its customers to purchase insurance. On or about October 31, 1995, INAC and Midcon entered into a Commercial Premium Finance Agreement ("Finance Agreement"), under which INAC financed $904,477.28 in premiums for Midcon's purchase of various insurance policies. This suit involves INAC's claims for unearned premiums on two of those policies—Policy Nos. S531576 and S531577. The insurers on these two policies were the Underwriter appellees, writing through the Lloyd's of London market or the Institute of London Underwriters market ("Underwriters").[1] Policy No. S531576 was a Maritime Employers Liability Policy, and Policy No. S531577 was an Energy Package Policy. Both were surplus lines policies with a one-year term from November 1, 1995 through October 31, 1996. Insurance Alliance, acting in part through its agent Gary D. "Bo" Burris, was the broker/surplus lines agent through whom the Underwriters sold the two policies.

In the Finance Agreement, Midcon agreed to pay INAC eleven monthly installments. As security for its debt to INAC and as permitted by Chapter 24 of the Texas Insurance Code, Midcon assigned INAC all unearned premiums, policy dividends, and loss payments under the policies. In addition, as part of the Finance Agreement, Midcon gave INAC a power of attorney, authorizing it to cancel the financed policies:

> You [Midcon] are appointing us [INAC] your ATTORNEY IN FACT for the purpose of canceling the policies financed by the agreement for nonpayment of premium within ten (10) days . . . after it is due . . . You also agree

---

1. Lloyd's of London and the Institute of London Underwriters ("ILU") are not insurance companies but rather insurance markets through which individual companies and syndicates agree to underwrite portions of specific risks. Therefore, for a given risk, there is no one insurer; rather, there are many insurers or "underwriters," each liable for its own percentage of the risk. *See* Thomas J. Gallagher, *The Institute of London Underwriters and the London Insurance Market,* 555 PRAC. LAW INST./COM. LAW & PRAC. SERIES 119 (1990) (discussing structure of ILU market); Eileen M. Dacey, *The Structures of the Lloyd's Market,* 555 PRAC. LAW INST./COM. LAW & PRAC. SERIES 33 (1990) (discussing structure of Lloyd's market). All of the underwriters have entered their appearances in this case. INAC's description of the Underwriters in the style of this case is incomplete because some of the Underwriters are from the ILU market—not from the Lloyd's market.

that we may receive all sums assigned to us, and execute and deliver on your behalf all documents relating to the policies which are necessary to carry out this agreement ...

On Midcon's behalf, INAC paid the financed amount by check to Insurance Alliance. Insurance Alliance accepted the check and deposited the proceeds into its own account. In addition, Lynne Marshall, an assistant supervisor at Insurance Alliance, signed a confirmation, agreeing that the conditions of an "Advice of Financed Premium" were acceptable. This Advice of Financed Premium stated, among other things, as follows:

This is to advise you of the acceptance of the Premium Finance Agreement in respect to the below described policies, and we have so notified the insured. It is essential, due to the terms of the Premium Finance Agreement, that the following instructions be observed:

1. —All return premiums which may become payable under the financed policies must be paid to INAC

After first deducting and retaining its commissions, Insurance Alliance forwarded the premium funds to the Underwriters.

Midcon did not make its June payment. INAC gave Midcon notice of default and notice of its intent to cancel. When Midcon failed to cure the default, INAC attempted to cancel the policies effective June 30, 1996, by mailing notice of cancellation to the Underwriters in care of Insurance Alliance.[2] The Underwriters had authorized Insurance Alliance to receive notices of cancellation from Midcon; however, the Underwriters claim that the insurance policies and TEX. INS.CODE ANN. art. 24.17 ("art.24.17") do not allow INAC

to send notices of cancellation to the Underwriters through their agent, Insurance Alliance.

Midcon subsequently filed bankruptcy. Midcon owes INAC at least $389,977.78. INAC asserts that premiums are earned *pro rata* over the life of the policies and that INAC should have received a total of $306,239.54 in unearned premiums on the two policies. None of the appellees returned any of the premiums on these policies. INAC filed suit against the Underwriters, Insurance Alliance and Burris, seeking a declaratory judgment, foreclosure of its security interests in the unearned premiums, damages for breach of contract, various other claims, and recovery of attorney's fees.

First the Underwriters, and then Insurance Alliance and Burris, filed respective motions for summary judgment. INAC filed cross-motions for summary judgment in response to both motions. The Underwriters, Insurance Alliance, and Burris all contended that they were not liable for unearned premiums because INAC did not send notice of cancellation directly to the Underwriters. Instead, notice was sent to the Underwriters in care of Insurance Alliance. The defendants argued that this was not proper notice under art. 24.17. Also, they argued that the Underwriters had already earned all of the policy premiums because a covered loss in excess of the policy premiums occurred before the alleged cancellation of the policies. The trial court denied INAC's motions and granted take-nothing summary judgments in favor of the Underwriters, Insurance Alliance, and Burris. In addition, the court granted a summary judgment in favor of the Underwriters on their claim

---

**2.** INAC's summary-judgment proof indicates that only one notice of cancellation was mailed—for Policy No. S531577; however, it appears, based on documents in the Underwriters' summary-judgment proof, that a similar notice was sent out for Policy No. S531576, although INAC did not prove this up.

against Insurance Alliance for full indemnity as to all amounts for which the Underwriters may be held liable to INAC in this case.[3] Insurance Alliance has not appealed this summary judgment, which has become final.

## Issues Presented

On appeal, INAC argues that its motions for summary judgment should have been granted and that appellees' motions should have been denied. INAC presents five issues for review: (1) whether INAC's notices of cancellation were legally effective and imposed on the Underwriters the obligation to cancel the policies and refund the unearned premiums to INAC; (2) in the alternative, whether the Underwriters waived their objections to INAC's sending notice to the Underwriters in care of Insurance Alliance; (3) in the alternative, whether the Underwriters were prejudiced by INAC's sending notice to the Underwriters in care of Insurance Alliance; (4) whether, under the Finance Agreement, the insurance policies, and applicable law, Insurance Alliance and Burris are liable to INAC for the unearned premiums; and (5) whether the Underwriters, Insurance Alliance, and Burris are liable for INAC's attorney's fees.

## Standards of Review

A party moving for summary judgment must establish its right to summary judgment on the issues presented to the trial court by conclusively proving all elements of the movant's claim or defense as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Havlen v. McDougall,* 22 S.W.3d 343, 345 (Tex.2000). When both parties move for summary judgment, each party must carry its own burden, and neither

can prevail because of the failure of the other to discharge its burden. *The Atrium v. Kenwin Shops of Crockett, Inc.,* 666 S.W.2d 315, 317–18 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Each being a movant, the burden is the same for both parties: to establish entitlement to a summary judgment by conclusively proving all the elements of the claim or defense as a matter of law. *Odeneal v. Van Horn,* 678 S.W.2d 941 (Tex.1984). When both sides move for summary judgment and the trial court grants one motion and denies the other, this court should review all summary-judgment proof, determine all issues presented, and render the judgment that the trial court should have rendered. *FM Properties Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

This court reviews the summary-judgment proof using familiar standards of review. *See Dolcefino v. Randolph,* 19 S.W.3d 906, 916 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). When a trial court's order granting summary judgment does not specify the grounds relied upon, this court must affirm summary judgment if any of the summary-judgment grounds are meritorious. *FM Properties Operating Co.,* 22 S.W.3d at 872.

## Did INAC's Notice of Cancellation Comply with Art. 24.17?

Chapter 24 of the Texas Insurance Code regulates the financing of insurance premiums. Article 24.17 states in pertinent part as follows:

. . .

(b) A premium finance agreement may contain a power of attorney enabling the premium finance company to cancel any insurance contract or con-

---

**3.** The Underwriters had sought indemnity from Insurance Alliance because Insurance Alliance—acting as agent for the Underwriters—failed to timely notify the Underwriters

of the notices of cancellation or to forward the notices of cancellation to the Underwriters.

tracts listed in the agreement. An insurance contract or contracts may not be canceled by the premium finance company unless the cancellation is effectuated in accordance with this section.

(c) If the insured fails to make the payments at the time and in the amount provided in the premium finance agreement, the premium finance company shall mail to the insured a written notice of the intent of the premium finance company to cancel the insurance contract because of the default in payments by the insured unless the default in payments is cured within a time certain stated in the notice. That time may not be earlier than the 10th day after the date on which the written notice was mailed. The premium finance company shall also mail a copy of the notice to the insurance agent or insurance broker indicated on the premium finance agreements.

(d) After expiration of the period given to cure the default, the premium finance company may cancel the insurance contract or contracts by mailing to the insurer a notice of cancellation. The insurance contract shall be canceled as if the notice of cancellation had been submitted by the insured, but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a notice of cancellation to the insured at the insured's last known address and to the insurance agent or insurance broker indicated on the premium finance agreement.

. . .

(f) Whenever a financed insurance contract is cancelled, and the premium finance agreement contains an assignment or power of attorney for the benefit of the premium finance company, the insurer shall return whatever unearned premiums are due under the insurance contract directly to the premium finance company within 60 days after the policy cancellation date . . .

Tex. Ins.Code Ann. art. 24.17 (Vernon 1981 & Vernon Supp.2000).

Art. 24.17(d) requires INAC to send notice of cancellation to (1) the insurer, (2) the insured, Midcon, and (3) the insurance agent or insurance broker indicated on the premium-finance agreement—William Rigg & Company ("William Rigg"). The Underwriters do not dispute that INAC properly mailed notice of cancellation to Midcon and to William Rigg. The only issue that appellees raised in the trial court as to Chapter 24 of the Insurance Code concerns the mailing of notices of cancellation to the insurers—the Underwriters. The issue is whether the language "mailing to the insurer a notice of cancellation" in art. 24.17(d) precluded INAC from sending a notice of cancellation to the Underwriters in care of Insurance Alliance. The Underwriters argue that, while Midcon could have canceled these policies by sending a cancellation notice to the Underwriters in care of Insurance Alliance, the policies do not state that cancellation can be made in this manner by a premium-finance company—such as INAC. This is not surprising because the insurance policies are drafted as two-party contracts between insurers and an insured, without any provision for a premium-finance company.

The Underwriters argue that INAC had no standing or right to send notices of cancellation to the Underwriters in care of Insurance Alliance and that art. 24.17 requires premium-finance companies such as INAC to send notices of cancellation directly to the Underwriters. The Underwriters base their argument on what they assert is the unambiguous language of art.

24.17 as well as the definition of "insurer" in 28 TEX. ADMIN. CODE § 25.64(b).

The parties have not cited and this court has not found any Texas cases dealing with the meaning and application of this language in art. 24.17(d). We must decide this issue of first impression under Texas law. In construing a statute, our objective is to determine and give effect to the legislature's intent. *See National Liability and Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). We presume that the legislature intended the plain meaning of its words. *Id.* If possible, we must ascertain the legislature's intent from the language it used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* When interpreting a statute, we consider the entire act, its nature and object, and the consequences that would follow from each construction. *Atascosa County v. Atascosa County Appraisal Dist.*, 990 S.W.2d 255, 258 (Tex. 1999). We must reject any statutory interpretation that defeats the legislative purpose. *Id.*

The language of art. 24.17(d) is unambiguous. The only reasonable interpretation of art. 24.17(d) is that a premium-finance company may use the same methods of mailing the notice to the insurer that are available to the insured. Art. 24.17(d) does not prevent INAC from mailing notice of cancellation to the Underwriters in care of Insurance Alliance. Art. 24.17(d) does not specify the address to which the notice should be mailed, and it does not require that the notice be mailed directly to the insurer or to the insurer's home-office address. This section also does not preclude sending notice of cancellation to insurers in care of an agent that they have designated as the proper recipient of cancellation notices from the insured. Further, art. 24.17(d) states that "[t]he insurance contract shall be canceled as if the notice of cancellation had been submitted by the insured...." We conclude that art. 24.17(d) allowed INAC to mail notices of cancellation to the Underwriters in care of Insurance Alliance.

Although this is an issue of first impression under Texas law, our construction of art. 24.17(d) agrees with the interpretation that other states have given to similarly-worded-premium-finance statutes. *See Cahoon v. Canal Ins. Co.*, 140 N.C.App. 577, 537 S.E.2d 538, 540–42 (2000) (holding that, as a matter of law, premium-finance company canceled insurance policy by mailing notice of cancellation to insurer through its agent, even though statute required that the notice be sent to and received by the "insurer"); *Insurance Manag., Inc. v. Guptill*, 16 Wash.App. 226, 554 P.2d 359, 361–63 (1976) (holding that, under a statute with the same language as art. 24.17(d), cancellation was effected when premium-finance company mailed notice of cancellation to insurer through its agent); *see also Savino v. Merchants Mut. Ins. Co.*, 44 N.Y.2d 625, 407 N.Y.S.2d 468, 470, 378 N.E.2d 1038 (N.Y.1978) (court states in dicta that notice of cancellation can be mailed to agent of insurer, where statute required the notice to be sent to the "insurer").

Further, in determining the meaning of art. 24.17, we must consider the entire statute, its nature and object, and the consequences that would follow from each construction. *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991). We must avoid an interpretation that would produce absurd results. *Id; McKinney v. Blankenship*, 154 Tex. 632, 282 S.W.2d 691, 698 (1955). The Underwriters authorized Insurance Alliance, on behalf of the Underwriters, to confirm coverage, issue binders of insurance and certificates of insurance, accept notices of loss and proofs of loss, send the insured notices

of cancellation, and receive notices of cancellation from the insured. The insurance policies and related documents contain the address of Insurance Alliance; however, they do not contain the addresses of the insurers. On Policy No. S531577 alone, there were at least 42 insurers—22 ILU underwriters and 20 Lloyd's syndicates— each of whom was severally liable for its respective share of the risk.[4] Interpreting art. 24.17(d) to require direct notice to the home-office address of each of these insurers would produce an absurd result and impose an unreasonable burden on INAC because the addresses of the many insurers have not been provided in the policy documents.[5]

In the trial court, the Underwriters responded to this issue by arguing that, under the practices of the London insurance market, notice to the lead Lloyd's syndicate or lead ILU underwriter is notice to all of the other underwriters from that market on that risk. While the files of Insurance Alliance do not contain the addresses of the lead underwriters on the two policies in question, Burris testified that he knew these addresses and that he could have given them to INAC had it requested them. Therefore, the Underwriters suggested that the difficulty of giving notice to so many foreign underwriters can be overcome by giving notice to the lead underwriter. This argument proves too much. If notice can be sent to the insurers in care of the lead underwriter in compliance with art. 24.17(d), then notice can also be sent to the insurers in care of Insurance Alliance—the Underwriters' agent for receiving notices of cancellation

from Midcon—in compliance with art. 24.17(d).

■ The Underwriters' citation of the definition of insurer from 28 TEX. ADMIN. CODE § 25.64(b) does not change this analysis. This section reads as follows:

The word 'insurer,' as used in the Insurance Code, Articles 24.17 and 24.22, means the company or other entity formally liable on the insurance risk. It does not mean an insurance agent. Accordingly, notice to an insurance agent or to a managing general agency of the insurer is not notice under the Insurance Code, Article 24.22, unless the premium finance company has received written authorization from a county mutual insurance company to notify an agent or managing general agent. If the insurance premium finance company gave notice to the insurer in accordance with the Insurance Code, Article 24.22, the insurer shall, as provided in the Insurance Code, Article 24.17, return whatever unearned premiums are due under the insurance contract directly to the insurance premium finance company within 60 days. Return of unearned premium through an accounts current with an agent or agency does not satisfy the insurer's obligation under the Insurance Code, Article 24.17.

28 TEX. ADMIN. CODE § 25.64(b) (West 2000).

The first two sentences of this section are consistent with the statutory definition of "insurer" and another definition of "insurer" in the administrative code that also applies to art. 24.17(d). *See* TEX. INS.CODE

---

4. *See* footnote one above.

5. The Underwriters argue that INAC did not attempt to obtain the addresses of the many insurers in question. However, there was no need to do so because the Underwriters had already designated Insurance Alliance as their agent to receive notices of cancellation, pre-

sumably because of the difficulty of giving notice to the large number of underwriters involved, who are citizens of various nations. Further, the plain meaning of art. 24.17(d) did not require sending notices to the home-office address of each of the Underwriters.

ANN. art. 24.01(8) (Vernon Supp.2000) (" 'Insurer' as used in this chapter is any capital stock company, title insurance company, reciprocal or interinsurance exchange, Lloyd's association ... fidelity, guaranty, and surety company, or trust company. Said insurer shall be organized or authorized to do business under the provisions of this code."); 28 TEX. ADMIN. CODE § 25.1(5) (West 2000) (defining "insurer" as "A company or other entity formally liable on an insurance risk."). The Underwriters are the parties formally liable on this insurance risk, and INAC gave notice of cancellation to the Underwriters in a manner authorized by the insurance policies. INAC did not give notice to an insurance agent.

The remainder of 28 TEX. ADMIN. CODE § 25.64(b) does not affect the manner in which notices of cancellation are to be sent to insurers under art. 24.17(d). In this appeal, the Underwriters do not dispute that proper notice was given under TEX. INS.CODE ANN. art. 24.22. To the extent the Underwriters argue that the third sentence of § 25.64(b) precluded INAC from mailing notice of cancellation to the Underwriters in care of Insurance Alliance, we disagree. The third sentence speaks only to art. 24.22. In the alternative, even if the second or third sentences stated that notices of cancellation under art. 24.17(d) cannot be mailed to insurers in care of their agents, this would be unenforceable because it would be contrary to the unambiguous language of art. 24.17(d) and TEX. INS.CODE ANN. 24.01(8); it would also be beyond the scope of the Texas Department of Insurance's authority to make rules and regulations for the enforcement of Chapter 24 of the Texas Insurance Code. *FM Prop-*

*erties Operating Co. v. City of Austin,* 22 S.W.3d 868, 883 (Tex.2000) (administrative rules and regulations cannot be enforced to the extent that they are contrary to a statute's plain language); *accord Fleming Foods of Texas, Inc. v. Rylander,* 6 S.W.3d 278, 282 (Tex.1999).

The Underwriters cite numerous out-of-state cases that they claim support their construction of art. 24.17(d). These cases are not on point and only stand for the general proposition that a premium-finance company must strictly comply with the applicable-premium-finance statute. None of these cases address the art. 24.17(d) issue in this case. All of the out-of-state cases that we have found on this issue are contrary to the Underwriters' position. *See Cahoon,* 537 S.E.2d at 540–42; *Insurance Manag., Inc.,* 554 P.2d at 361–63; *see also Savino,* 407 N.Y.S.2d at 470, 378 N.E.2d 1038. We conclude that art. 24.17(d) allows premium-finance companies to cancel an insurance policy by mailing notice of cancellation to the insurer in care of the agent appointed by the insurer to receive notices of cancellation from the insured.[6] We reject the Underwriters' art. 24.17(d) argument, which was the only ground asserted in the Underwriters' motion for summary judgment.[7] Therefore, we hold that the trial court erred in granting the Underwriters' motion for summary judgment against INAC, and we sustain INAC's first issue to this extent.

## Should the Trial Court Have Granted INAC's Motion for Summary Judgment?

In reviewing the cross-motions for summary judgment by the Underwriters and

---

**6.** Because we agree with INAC's construction of art. 24.17(d), we need not address INAC's second and third issues, which are alternative issues in the event that we disagree with INAC's construction of art. 24.17(d).

**7.** The Underwriters raised their Section 13 argument—which we discuss in the next section of this opinion—in response to INAC's motion for summary judgment but not in their own motion for summary judgment.

INAC, this court should examine the summary-judgment proof, determine all issues presented, and render the judgment that the trial court should have rendered. *FM Properties Operating Co.,* 22 S.W.3d at 872. On appeal, the Underwriters assert two arguments as to why Insurance Policy No. S531577 bars INAC from recovering in this suit. We will examine these arguments and then determine how the trial court should have ruled on INAC's motion.

██ The Underwriters argue that INAC cannot recover because the premiums were fully earned before INAC's attempted cancellation in June of 1996. The Underwriters assert that the premiums were fully earned under Section 13 of Insurance Policy No. S531577 because of an insured loss—an underground well blowout—that occurred in May of 1996 and that resulted in a payment by the Underwriters in excess of the insurance premiums. Section 13 of Insurance Policy No. S531577 reads, in pertinent part, as follows:

> In the event of nonpayment of premium or the first installment thereof within 30 days after attachment, or of any additional premium or any other installment as and when due, Underwriters may cancel this policy upon 10 days written or telegraphic notice sent to the Assured at his or its address shown herein. Such proportion of the premium, however, as shall have been earned up to the time of cancellation for nonpayment of premium shall be payable. In the event of an occurrence giving rise to a claim recoverable within the terms and conditions of this policy occurring prior to *any such cancellation for nonpayment of premium,* then the full minimum and deposit premium or the premium earned

in accordance with the Rating Provisions in Clause 2 of the General Conditions, whichever is greater, shall be considered earned and payable.

> This policy may be cancelled by the Assured at any time by written notice or by surrender of this policy to Underwriters. This policy may also be cancelled by Underwriters, with or without the return or tender of the unearned premium, by delivering to the Assured, by telegraph, or by sending by mail to the Assured's address shown herein not less than thirty (30) days prior notice stating when the cancellation shall be effective. . . .

Section 13 of Insurance Policy No. S531577 (emphasis added).

The Underwriters assert that Section 13 applies to cancellations by both the insured[8] and the Underwriters. Therefore, the Underwriters argue that the third sentence of Section 13 applies in this case to make all premiums earned as of the May, 1996, well blowout. For the sake of argument, we presume that this blowout was an occurrence giving rise to a claim recoverable within the terms and conditions of this insurance policy. Nonetheless, we cannot agree with the Underwriters' interpretation of Section 13. The only reasonable interpretation of this section is that the third sentence applies only to cancellations by the Underwriters for nonpayment of premium. The Underwriters seek to apply the third sentence of Section 13 to a cancellation that was not made by the Underwriters. We reject this argument because it is contrary to the unambiguous language of Section 13.

██ The Underwriters also argue that Section 5 of the General Conditions of

---

**8.** The text of Section 13 uses the older term "assured"; however, in this case, "assured" is synonymous with "insured."

Insurance for Policy No. S531577 bars INAC's claims in this case. This section prohibits assignment of the insurance policy by the insured to a third-party without the written endorsement of the Underwriters. The Underwriters waived this argument because they did not present it to the trial court. TEX.R.APP. P. 33.1(a); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993) (summary-judgment ruling cannot be affirmed on grounds not expressly raised in the trial court). In any event, this argument lacks merit because Section 7 of the General Conditions of Insurance for Policy No. S531577 amends the terms of the policy to conform with applicable state statutes. Chapter 24 of the Texas Insurance Code allows the insured to grant a power of attorney and assignment of rights to a premium-finance company without a written endorsement from the insurer. Because Section 5 of the General Conditions conflicts with the Chapter 24 of the Texas Insurance Code, Section 7 amends Section 5 to allow assignments as provided under Chapter 24 of the Texas Insurance Code. Therefore, even if the Underwriters had preserved this argument for our review, Section 5 would be no bar to INAC's claims in this case.

Having rejected the Underwriters' arguments against INAC's motion for summary judgment, we must still determine how the trial court should have ruled on this motion. Regardless of the Underwriters' response to INAC's motion, the trial court may not grant summary judgment by default, and INAC must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of its claims as a matter of law. *Rhone–Pou-*

*lenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999).

■ Chapter 24 of the Texas Insurance Code does not create a statutory claim for premium-finance companies like INAC, and INAC's claim in this case is for breach of the insurance contract, acting as attorney-in-fact for the insured and to enforce INAC's rights under the Finance Agreement. *See Service Fin. v. Adriatic Ins. Co.,* 46 S.W.3d 436, 446–49 (Tex. App.—Waco 2001), *judgm't vacated w.r.m.,* 51 S.W.3d 450 (Tex.App.—Waco 2001).[9] To recover on its contract claim for unearned policy premiums, a premium-finance company like INAC must establish at least the following: (1) the premium-finance company gave notice of intent to cancel, an opportunity to cure, and notice of cancellation in accordance with art. 24.17; (2) the insurance policy provides for a refund of unearned premiums upon cancellation; (3) the premium-finance company has authority to collect the refund under the premium-finance agreement; (4) the insured defaulted under the premium-finance agreement; (5) the insurer failed to refund the full amount of the unearned premium owed by the insurer on the policy. *See* TEX. INS.CODE ANN. 24.01, *et seq.* (Vernon 1981 & Vernon Supp.2000); *Frost Nat. Bank v. Burge,* 29 S.W.3d 580, 593 (Tex.App.—Houston [14th Dist.] 2000, no pet.).

■ After reviewing INAC's motion and summary-judgment proof, we conclude that INAC conclusively proved only the third and fourth elements above. Although the insurance policies do seem to provide for a refund of unearned premiums upon cancellation, INAC never specifically alleges this in its motion. Although

---

9. The parties in *Service Fin.* filed a joint motion to dismiss the appeal because of settlement, which the court granted without withdrawing its prior opinion in the case. *See*

*Service Fin. v. Adriatic Ins. Co.,* 51 S.W.3d 450 (Tex.App.—Waco 2001); TEX.R.APP. P. 42.1.

INAC claims that premiums are earned *pro rata* over the life of the policies, INAC never states the policy provisions or other reasons that entitle Midcon (and thus INAC) to recover unearned premiums upon cancellation and that specify the method by which these unearned premiums are calculated. In INAC's motion and in the affidavit of Robert Ballon, INAC states in a conclusory manner that the unearned premiums under the two policies total $306,239.54 on a *pro rata* basis. INAC never explains the basis for this number, except that it is apparently based on total insurance premiums of $891,881. Performing a *pro rata* calculation [10] based on this premium amount yields a total unearned premium amount of less than $300,000—not $306,239.54. In any event, INAC's own summary-judgment proof indicates that the sum of the insurance premiums for the two policies in question is $843,631—$812,131 plus $31,500—not $891,881 as claimed by INAC.[11] Further, INAC's motion did not prove that it sent out a notice of cancellation for Policy No. S531576. Therefore, the trial court properly denied INAC's motion for summary judgment because INAC did not prove that it was entitled to judgment as a matter of law on its contract claim for unearned policy premiums.[12] We overrule INAC's first issue to the extent that it seeks reversal of the trial court's denial of INAC's motion for summary judgment as to the Underwriters.

## Are Insurance Alliance and Burris Liable to INAC for the Unearned Premiums?

In its fourth issue, INAC asserts that Insurance Alliance and Burris are individually liable for the unearned premiums under either 28 TEX. ADMIN. CODE § 25.11 or under a common-law claim for breach of contract. We reject these arguments and hold that 28 TEX. ADMIN. CODE § 25.11 does not impose individual liability on Insurance Alliance and Burris and that INAC and Midcon have no contract with these parties. *See Service Fin.*, 46 S.W.3d at 458–60.

 INAC asserts that the following administrative rule imposes liability on Insurance Alliance and Burris:

> If an insurance premium finance company funds surplus lines insurance policy premiums or notifies a surplus lines agent or agency that its insurance policy premiums are financed, the surplus lines agent or agency shall return all gross unearned premiums to the insurance premium finance company within 60 days of notice of cancellation.

28 TEX. ADMIN. CODE § 25.11 (West 2000).

This rule must be construed in light of Chapter 24 of the Texas Insurance Code and the other rules adopted to implement that chapter. One of these rules generally requires that insurers pay the entire unearned premium to the premium-finance company within 60 days of receiving notice

---

10. We base this calculation on earned premiums from November 1, 1995 through June 30, 1996 and unearned premiums from July 1, 1996 through October 31, 1996.

11. The Ballon affidavit states, without explanation, that the total premium for the two policies was $891,881. Nonetheless, the notice of cancellation attached to the Ballon affidavit, the Confirmations of Coverage, INAC's Confirmation Request dated November 16, 1995, and other documents in INAC's summary-judgment proof show that the premium for Policy No. S531576 was $31,500 and that the premium for Policy No. S531577 was $812,131—a total of $843,631.

12. Our holding in this case does not preclude the trial court from granting a motion for summary judgment on remand, if INAC submits a motion that proves INAC's entitlement to judgment as a matter of law.

of cancellation, if the insurers have been notified of the existence of the premium-finance agreement. *See* 28 Tex. Admin. Code § 25.10. Further, nothing in Chapter 24—the statute under which these rules were adopted—imposes liability for unearned premiums on surplus lines agents or agents designated to receive notice of cancellation beyond their obligation to transmit the appropriate unearned premium to the insured after receiving the unearned premium from the insurer. INAC has not shown that Insurance Alliance or Burris received any unearned premiums on these policies from the Underwriters. We hold that 28 Tex. Admin. Code § 25.11 does not impose liability on Insurance Alliance and Burris for any unearned premiums owed by the Underwriters. *See Service Fin.*, 46 S.W.3d at 444–49, 458–60 (holding that art. 24.17 and related regulations do not create independent statutory claims and holding that surplus lines agent had no individual liability to the finance company for unearned premiums).

■ In the alternative, INAC asserts that, by participating in the procurement of these insurance policies for Midcon as the Underwriters' agent, by accepting and negotiating INAC's check for the policy premiums, and by signing a confirmation request from INAC, Insurance Alliance and Burris have a contractual obligation to refund the unearned premiums to INAC. We reject this argument. The cases cited by INAC do not support this assertion. Insurance Alliance accepted and negotiated the check for the premiums financed as agent for the Underwriters. This conduct does not create a contract between INAC and Insurance Alliance that requires Insurance Alliance to be independently liable for unearned premiums.

Insurance Alliance did sign off on a Confirmation Request letter that contained an Advice of Financed Premium. The terms of this letter show that it was sent to Insurance Alliance as agent for the Underwriters. The letter asks Insurance Alliance to confirm and agree to several matters, including the following: (1) that the policy information in the letter is correct and (2) that the conditions of the Advice of Financed Premium are acceptable. The enclosed Advice of Financed Premium is addressed to the Underwriters in care of Insurance Alliance. To the extent that any terms of the Advice of Financed Premium might be binding obligations, they would be binding on the Underwriters, because these terms refer to the "insurer," which is listed as being the Underwriters.[13] In sum, the summary-judgment proof does not prove any facts that would impose a contractual obligation on Insurance Alliance or Burris to pay any unearned premiums under the two insurance policies at issue. *See Service Fin.*, 46 S.W.3d at 458–60 (holding that surplus lines agent had no contractual liability to finance company in claim for unearned premiums); *Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 134–35 (Tex.App.—Houston [14th Dist.] 1997, no pet.) (affirming summary judgment finding no contractual obligation).

We hold that the trial court correctly granted the motion for summary judgment filed by Insurance Alliance and Burris and that the trial court correctly denied INAC's cross-motion. We overrule INAC's fourth issue.

### Can INAC Recover Attorney's Fees Against the Appellees?

In its fifth issue, INAC asserts that it is entitled to attorney's fees in this case un-

---

**13.** Burris did not negotiate the premium check in question and did not sign the Confirmation Request letter.

der both Chapter 37 and Chapter 38 of the Texas Civil Practice and Remedies Code. Appellees assert that declaratory relief is not available to INAC and that Chapter 38 does not apply because there is no contract between INAC and the Underwriters. Under Chapter 37, the Texas Declaratory Judgment Act, the trial court has discretion to award reasonable, necessary, equitable, and just attorney's fees to any party or parties to the declaratory judgment action. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997); *Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex.1998). To obtain an award of attorney's fees under Chapter 38, a party must satisfy the following requirements: (1) the party must prevail and recover damages under one of the claims listed in TEX. CIV. PRAC. & REM. CODE ANN. § 38.001; and (2) the party must satisfy the procedural requirements of TEX. CIV. PRAC. & REM.CODE ANN. § 38.002. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001, *et seq.* (Vernon 1997); *Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 257 (Tex.App.—Houston [14th Dist.] 1998, no. pet).

■ To resolve the attorney's fees issues, we must determine the nature of INAC's claim against the Underwriters for unearned policy premiums. We hold that this claim sounds in contract, and that, although it is affected by certain requirements in Chapter 24 of the Insurance Code, it is not a separate statutory claim. *See Service Fin.*, 46 S.W.3d at 444–49 (holding that art. 24.17 and the rules adopted to enforce it do not create independent statutory claims but factor into the finance company's breach of contract claim against the insurer on behalf of the insured). INAC's claim is based on Midcon's insurance contracts with the Underwriters. Because contract claims are within the scope of Chapter 38, INAC may recover reasonable attorney's fees against

the Underwriters under Chapter 38 if INAC prevails and recovers damages on its claim for unearned premiums and if INAC satisfies the procedural requirements of TEX. CIV. PRAC. & REM.CODE ANN. § 38.002. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001, *et seq.; Kenneth Leventhal & Co.*, 978 S.W.2d at 257.

■ INAC sought attorney's fees under Chapter 37 of the Texas Civil Practice and Remedies Code in an amended petition, not in its original petition. INAC's declaratory judgment action overlaps with the relief sought under its breach of contract claims. In this context, INAC may not recover attorney's fees under Chapter 37 against any of the defendants. *Kenneth Leventhal & Co.*, 978 S.W.2d at 258–59; *accord Service Fin.*, 46 S.W.3d at 460–61.

Because we affirm the trial court's take-nothing summary judgment as to INAC's claims against Insurance Alliance and Burris, INAC may not recovery attorney's fees against Insurance Alliance and Burris under Chapter 38. *Kenneth Leventhal & Co.*, 978 S.W.2d at 257–58. We also find that the trial court did not abuse its discretion by denying INAC attorney's fees against Insurance Alliance and Burris under Chapter 37. *See Bocquet*, 972 S.W.2d at 20–21.

We hold that, on remand, INAC may seek to recover reasonable attorney's fees against the Underwriters under Chapter 38 of the Texas Civil Practice and Remedies Code. To this extent, we sustain INAC's fifth issue. We overrule this issue in all other respects.

### Conclusion

Art. 24.17(d) allows INAC to mail notice of cancellation to the Underwriters in care of Insurance Alliance. Therefore, the trial court erred in granting the Underwriters' motion for summary judgment against

INAC. Because INAC did not show itself to be entitled to judgment as a matter of law on its contract claim for unearned premiums, the trial court properly denied INAC's motion for summary judgment against the Underwriters. Insurance Alliance and Burris are not individually liable to INAC under 28 Tex. Admin. Code § 25.11 or under a breach of contract claim. Therefore, the trial court properly granted their motion for summary judgment against INAC and properly denied INAC's motion for summary judgment against Insurance Alliance and Burris. The trial court correctly denied INAC recovery of attorney's fees against Insurance Alliance and Burris. INAC may not recover attorney's fees against the Underwriters under Chapter 37 of the Texas Civil Practice and Remedies Code; however, on remand, INAC may recover reasonable attorney's fees against the Underwriters if it proves to the trial court that it has satisfied the requirements of Chapter 38 of the Texas Civil Practice and Remedies Code.

We sustain INAC's first issue in the following respects: (1) we agree with INAC's construction of art. 24.17(d); and (2) we hold that the trial court erred in granting the Underwriters' motion for summary judgment against INAC. We overrule INAC's first issue to the extent that it seeks reversal of the portion of the trial court's judgment denying INAC's motion for summary judgment as to the Underwriters. Our ruling on INAC's first issue makes it unnecessary for us to rule on INAC's second and third issues. We overrule INAC's fourth issue. We also overrule INAC's fifth issue, except that we sustain it to the extent that we hold INAC may recover reasonable attorney's fees against the Underwriters if it proves to the trial court that it has satisfied the pertinent provisions of Tex. Civ. Prac. & Rem.Code Ann. § 38.001, *et seq.* There-

fore, we reverse the trial court's take-nothing judgment against INAC on its claims against the Underwriters, and we sever and remand these claims to the trial court for further proceedings consistent with this opinion. We affirm the trial court's judgment granting the motion for summary judgment of Insurance Alliance and Burris and denying INAC's cross-motion.