HARDIN HART v. M. D. BULLION ET AL.

1. ESTOPPEL.—That a party expressed the opinion that certain documents, exhibited at the time of making a contract, constituted a good title, and that part of same documents were delivered to him, on making a contract, by which he was to have a good and sufficient title, will not estop such party from exacting a good title, as stipulated for by him, in making a purchase of the lands to which such documents were claimed as evidencing title.

2. SAME—PARTIAL WAIVER.—The waiver or acceptance of satisfaction for the breach of one part of a divisible contract, will not estop or preclude a vendor from demanding a rescission for the failure to perform another and more material stipulation in such contract.

3. TIME.—In the absence of a stipulation as to the time when an act is contracted to be done, the law allows a reasonable time for its performance.

4. REASONABLE TIME.—What is reasonable time depends upon the nature and character of the thing to be done, the circumstances of the case, and the difficulties attending its accomplishment.

5. SAME—PRACTICE.—As an abstract question, what is reasonable time may be one of law; but unless the facts are admitted, its determination becomes a mixed question of law and fact.

6. PLEADING—SAME.—A general allegation as to reasonable time as forming part of a contract supplied by the law, ought not to be allowed. The facts upon which the court is expected to act in charging upon the doctrine of reasonable time, should be distinctly pleaded.

7. SAME.—Where a contract anticipated the obtaining of titles to lands to be located, and stipulated that the surveys should be returned to the Land Office within four months, certainly four years would be ample time to await before insisting upon performance delayed until the patents thereon should be obtained.

8. SPECIFIC PERFORMANCE.—In an action to rescind a contract, a proffer to perform, made in defense, should show an ability to comply, or a reasonable prospect of being able to do so.

9. SAME.—An offer to make deeds to lands by a party in whom it appears the title thereto is not vested, is not a defense to an action to rescind a contract for the failure of the defendant to "make a good and sufficient title"; which stipulation formed part of the contract sought to be rescinded, and the failure of title is alleged as the reason for rescission.

APPEAL from Hunt. Tried below before the Hon. Green J. Clark.

Hardin Hart brought suit, June 11, 1875, against M. D. Bullion, his wife, Sarah J. Bullion, and B. D. Martin, to rescind a contract for the exchange of land.

The obligation discussed in the opinion is as follows:

"An article of agreement made by and between M. D. Bullion and Sarah Bullion, his wife, of the first part, and Hardin Hart of the second part, witnesseth:

"Bullion and wife transfer to Hardin Hart their one-fourth

locative interest in thirty-two sections of land, described as follows:

"Twenty-two sections of Fannin scrip, S. P. R. Co.—[Then follow the file-numbers of the surveys, and the number of each certificate.]

"Also, one-fourth interest in ten sections, it being their locative interest in the M., E. P. & P. R. Co., to be located in counties No. ——, as follows:—[Following are given the numbers of the certificates.]

"Said certificates transferred to O. H. P. Garrett.

"For and in consideration of the hotel in Greenville heretofore sold by the said Hart to the said Bullion, by bond recorded in the records of Hunt county, and fifty acres of land out of the Russell headright, deeded by M. H. Wright to Hardin Hart, on the west side of Cowleach fork of Sabine, at the bridge on the Jefferson road; also, one block of land in the town of Greenville, No. ——; also, three lots in block ——, in the town of Greenville, sold by Charles Dougherty to Hardin Hart, and recorded in the records of Hunt county.

"It is further agreed between the parties, that the said Bullion and wife are to be at all expenses in locating and patenting the thirty-two sections of land, and make, or cause to be made, to the said Hart a good and sufficient title to their one-fourth locative interest in the thirty-two sections of land; and the said Hart, so soon as said titles are made to the sections heretofore described, is to make to the said Bullion and wife a good and sufficient title to the above-described property, sold by said Hart to said Bullion and wife.

"In testimony whereof, we hereunto set our hands and seals, (using scrolls for seals,) this the 6th day of March, A. D. 1871.

(Signed)           "M. D. BULLION.

"SARAH J. BULLION.

"HARDIN HART.

"Witness:

    "DANIEL UPTHEGROVE."

Which contract was duly acknowledged and recorded.

The opinion gives a full statement of the additional facts in litigation, and of the proceedings had.

Verdict and judgment were for the defendants. Hart appealed.

*Richard B. Sample,* for appellant, cited and discussed Hogan *v.* Crawford, 31 Tex., 634; Ratcliff *v.* Baird, 14 Tex., 45; Pugh & Shultz *v.* Chesseldine, 11 Ohio, 123; Fletcher *v.* Button, 4 Comst., 396; Hays *v.* Bonner, 14 Tex., 629; 2 Pars. on Cont., 535, 661; Estes *v.* Browning, 11 Tex., 243; Story's Eq. Jur., sec. 1098; Merchants' Mut. Ins. Co. *v.* Lacroix, 45 Tex., 158; Browning *v.* Estis, 3 Tex., 462; Secrest *v.* Jones, 21 Tex., 121; Baker *v.* Ramey, 27 Tex., 52; Gregg *v.* English, 38 Tex., 139; Scoby *v.* Sweatt, 28 Tex., 730; Roeder *v.* Robson, 20 Tex., 765; Yarborough *v.* Wood, 42 Tex., 94; 1 Greenl. Ev., sec. 37.

*Upthegrove & Cushman,* also for appellant, cited and discussed Green *v.* Chandler, 25 Tex., 155; Secrest *v.* Jones, 21 Tex., 121; Scarborough *v.* Arrant, 25 Tex., 130; Burleson *v.* Burleson, 28 Tex., 416; Page *v.* Arnim, 29 Tex., 69; Watson *v.* Hewitt, 45 Tex., 473; Hermann on Est., secs. 416, 467, 471.

*J. J. Hill,* for appellee.—What is a "reasonable time," is not always a question of law. (2 Pars. on Cont., 661, note *o.*)

The contract, known as "exhibit A," is an entire contract. (2 Pars. on Cont., 517–519, 5th ed.)

Election. (2 Story's Eq. Jur., sec. 1075; Big. on Estop., 503, 508, 511; Green *v.* Chandler, 25 Tex., 159; Roeder *v.* Robson, 20 Tex., 765; Sugden on Vend., 266; Rogers *v.* Green, 35 Tex., 730.)

The legal title was a bare, naked trust, in the patentee, held in subordination to the superior equitable rights of the locator. (Gibbons *v.* Bell, 45 Tex., 418.)

Waiver.    (Price *v.* Dyer, 17 Ves., 356; *Ex-parte* Mills, 2 Ves., 299; The Marquis Townshend *v.* Stangroom, 6 Ves., 328.)

A condition in a sealed instrument may be waived by parol.   (The Mayor, &c., of N. Y. *v.* Butler, 1 Barb., 326; Wood *v.* Perry, 1 Barb., 114.)

One may waive a strict compliance of terms by acts *in pais.*   (Vroman *v.* Darrow, 40 Ill., 171; Merchants' Ins. Co. *v.* Lacroix, 45 Tex., 158; Lawrence *v.* Dale, 3 Johns. Ch., 23, 24; McKay *v.* Carrington, 1 McLean, 50; Fry on Spec. Per., 385, 389, 408–410.)

No vendor's lien.   (1 Perry on Trusts, sec. 235, and references.)

The contract not varied.   (Epperson *v.* Young, 8 Tex., 135; Callison *v.* Gray, 25 Tex., 84.)

Moore, Associate Justice.—In November, 1870, appellant, Hart, sold to appellees, Bullion and wife, lots 1, 6, 7, and 8, in block 17, and lots 2, 3, 4, and 5, in block 23, in the town of Greenville, for the sum of $6,000, to be paid in land in the State of Texas, situated north of the Brazos river, at $2 per acre.   On the 6th of March, 1871, this contract was cancelled by a written agreement, wherein Bullion and wife undertake and agree to transfer to Hart their one-fourth locative interest in thirty-two sections of land, twenty-two sections of which purport, as appears by the contract, to have been located in Fannin land district, by virtue of scrip issued to the Southern Pacific Railway Company, and returned to the General Land Office; and upon eight of which patents had issued to the heirs of Pendleton Murrah.   The other ten sections, issued to the Memphis and El Paso Railway Company, transferred to one Garrett, seem not to have been then located.   In consideration whereof, Hart, on his part, agreed and undertook, so soon as Bullion and wife should make, or cause to be made, to him "a good and sufficient title" to their said one-fourth locative interest

in the thirty-two sections of land "located by virtue of said scrip, to make them a like title to said lots, and certain other lots in the town of Greenville, and fifty acres of land in the vicinity of said town."

The certificates or scrip belonging to Garrett had been, previous to the date of this contract, or were shortly thereafter, filed or located by Bullion, on land in Denton county. But the land upon which they were so filed having been previously appropriated, these locations were invalid. Garrett thereupon withdrew said scrip from Bullion's hands, and annulled his contract with him for its location. And it is not pretended that Bullion is, or will be, able to make Hart a title to any part of the land which has been, or was to have been, acquired by the location of this scrip. It is insisted, however, and Hart admits, that he agreed and told Bullion, if he would secure him the titles, as stipulated, on the other scrip, that he would accept other lands in lieu of that lost by his failure to locate the Garrett scrip. And on the 3d of October, 1874, Bullion, as he says, in part compensation for the locative interest in the Garrett scrip, made to Hart a deed for 737½ acres of other land. Hart, however, claims that this deed was not made for this purpose, but was intended to secure him against loss, by his having executed, to Bullion and others, at his request, a deed for a portion of the lots, for which title was not to have been made until the contract had been fully complied with by Bullion and wife.

It is not stipulated in said agreement of March 6, 1871, within what time Bullion and wife were to make Hart the title to the lands as therein stipulated. Nor does it appear, from said instrument, to whom said twenty sections of said scrip issued to the Southern Pacific Railway Company belonged, or with or for whom Bullion and wife had contracted to locate them. It appears, however,—and we must infer that this was known to Hart when the agreement between them was made,—that they claim the locative interest to which they had stipulated to make, or cause to be made, a good and suffi-

cient title to Hart, under and by virtue of a contract which Bullion claims to have been made with him by Mrs. S. E. Murrah, who appellant, in his petition, alleges was the wife of said Pendleton Murrah, to whose heirs eight sections of the land located by said scrip was patented. This contract purports to have been made with Mrs. Murrah by Thomas P. Martin, as her agent, August 31, 1867. It designates and describes the certificates to which it refers by their numbers as given in the contract with Hart, and recites that they were issued to the Southern Pacific Railway Company, and transferred by said company to Pendleton Murrah; but does not show what interest Mrs. Murrah had in them, or by what right or authority she undertook to contract for their location, or could convey an interest in the land when located as compensation to the locator. Nor is her interest in the certificates, or her authority to make the contract, or the authority of Martin to act for or bind her, shown, or attempted to be shown, except as an inference from the contract itself, and the location of the certificates by Bullion, and the issuance of the patents on such location.

It may also be stated, in this connection, that it is expressly stipulated, in said contract, that said certificate should be located, and the field-notes thereof returned to the General Land Office, ready for patents to be issued thereon, within four months from the date of said contract; yet, with the exception of those patented at the date of the contract with Hart, none of the lands located by the "Murrah certificates," as they are called in the transcript, were patented until after the institution of this suit; and it is by no means certain that patents for any of them were gotten by Bullion. It is true, he testified that he procured all the patents; but it is quite probable that he merely meant that patents had been obtained for them by reason of what had been done by him; for he admits that Martin filed in the General Land Office a protest against their delivery to him, and failed to produce, on the trial, any patents issued subsequently to the date of the con-

tract with Hart, but merely certified copies of them, to show that the land had been patented. It may be also here noted, that only two sections of the land were patented to Mrs. Murrah, and five of them were patented neither to her nor the heirs of Pendleton Murrah, but to the Southern Pacific Railway Company.

On the 15th of February, 1873, when there can be no pretense that Bullion and wife had made, or caused to be made, to Hart, title to the land referred to in said agreement of the 6th of March, 1871, or title to any other lands in lieu thereof, appellee M. D. Martin purchased from them the principal part of the property which Hart was to convey them when they complied with the terms of said contract, and took from them a bond to procure title to the property sold him, by complying with their said agreement of March 6, 1871, and the said ageement made and entered into August 31, 1867, between appellee M. D. Bullion and T. P. Martin, agent for S. E. Murrah. It is therefore beyond question, that appellee Martin has no better title to that part of the property in controversy claimed by him than his vendors, Bullion and wife. The pretense, that he was induced to purchase the property from Bullion and wife upon the admissions of Hart that they had performed their contract, or that he had waived its performance, or that he (Martin) was ignorant or misled in regard to the matter, is clearly rebutted by his bond for title from Bullion and wife, as well as by his own testimony upon the trial of the case.

The only pretense towards the performance of the contract by Bullion and wife prior to the institution of this suit, shown in the record, is a deed for 737½ acres of land, made to Hart by Bullion October 3, 1874, as he insists, in part compensation for the locative interest in the ten Garrett certificates, which had been lost; but, as Hart alleges, as security for the lots to which he had, at Bullion's request, given him and others an absolute title, to enable him to raise the money to

fulfill his contract to locate and procure patents on said certificates.

The record clearly shows that Hart repeatedly complained of Bullion's delay in getting patents on the "Murrah scrip"; and some months before bringing this suit he tendered Bullion a deed for the property to be conveyed him, who then said that he was unable to comply with the contract; and though notified that unless he did so by the ensuing term of court suit would be brought to cancel the contract, he gave no excuse or explanation for the delay, nor assurance or intimation that he could or would endeavor to comply with his contract by that or any other time.

Comment upon all the questions which are presented in the record, or even upon those which have been discussed by counsel, would be impossible, without protracting this opinion to a great length; nor do we deem it necessary that we should do so. The mere statement of appellant's case, as presented in the record, without comment or argument, is sufficient to show the glaring injustice of this judgment. An inspection must leave the dispassionate and unbiased inquirer at a loss to determine how such a result was reached.

After waiting for more than four years for the fulfillment of the stipulations of the contract, in consideration of which he had surrendered the possession of his property, appellant asks its rescission, upon such terms as might be thought equitable and just by the court; or, if the contract could not be cancelled, that he have judgment for the value of his property. And although the averments of his petition were fully sustained by the evidence, and the defendants utterly failed to show that they had complied with the contract, or were then, or would be in future, able to comply with it, appellant was adjudged to take nothing by his suit.

The principal grounds of defense relied upon by appellees seem to be—

1st. That appellant was a lawyer, and that the contract under which Bullion and wife claimed to be entitled to a lo-

cative interest in the "Murrah certificates," as they are called, was shown him, and that he was fully informed of all the facts connected therewith; that he encouraged Bullion and wife to make the contract with him, and stated to them and others, at the time and afterwards, that they had a good title to the locative interest in the lands which they agreed to convey him; that he was therefore estopped from disputing their title; that, by the contract, they had conveyed appellant their equitable interest in the land, which was superior to the legal title; and by accepting the papers upon which appellees Bullion and wife relied to establish their right to a locative interest, appellant not only admitted the validity of their title, but also bound himself to take such action as might be necessary to get the legal title to the land. This defense, however, is contradicted by other parts of appellees' answers, and is altogether unsustained, and, indeed, contradicted by their own testimony, and is in direct conflict with the stipulations of their contract.

It can hardly be supposed that appellant would have agreed to sell his property, and have suffered appellees to take and keep possession of it for years, unless he believed that they had or could get title to the property they were to give him in exchange for it. But, certainly, neither his opinion that they had or could acquire a valid title to the property to be conveyed him, nor the mere fact that some of the papers which tended to establish their rights was placed in his hands when the trade was made, will estop him from insisting upon their making, or causing to be made to him, such title as is stipulated in their bond.

Nor can we agree that appellant, by accepting the deed for 737½ acres of land, as claimed by appellees, in part compensation for the locative interest in the Garrett certificates, is estopped from demanding a rescission for the non-fulfillment of their contract by Bullion and wife, in other material and essential particulars. A suit for the rescission of a contract being an appeal to the chancery jurisdiction of the court, it is

not to be determined by the harsh and strict rules of law, but upon broad and liberal principles of equity. It is therefore by no means to be inferred that a cancellation will be decreed in every instance where the defendant is in default in some of the stipulations of the contract; and certainly it will not be done for a breach of the contract in respect to a matter which has been waived or condoned by the plaintiff. But we cannot agree that the waiver or acceptance of satisfaction for one breach estops or precludes the plaintiff from demanding a rescission for the failure to perform another and more important stipulation of a divisible contract, and this where the contract could be rescinded without injustice, or a violation of the equitable rights of the defendants,—especially in a case like this, where the plaintiff has the legal title, upon which he might have maintained his action at law for the recovery of the property, and driven the defendant to appeal to the equity power of the court, to adjust the rights of the parties upon the principles upon which it is asked to do so by the bill for rescission.

2d. Appellees alleged, in their answer, that appellant did not make, and was unable to make, a valid title to a part of the property which he sold and had bound himself to convey them. But this ground was abandoned upon the trial. It is therefore unnecessary for us to consider, if this was the fact, whether it would not be, as appellants insist, a ground for a rescission of the contract, rather than a reason for refusing to rescind it.

3d. The only serious and plausible ground of defense, if sustained by the evidence presented by the answer of appellees, is that appellant had waived the failure in respect to the Garrett certificates, and had agreed to accept other lands in lieu thereof, and that sufficient time had not elapsed for the performance and completion of the contract in other particulars when this suit was brought; that due diligence had been used, &c.; and that appellees were willing and fully prepared to comply at the date of their amended answer, &c.

The contract, as has been previously stated, does not, in terms, fix the time within which Bullion and wife were to make or cause titles to be made to the lands to be conveyed appellant. In the absence of such stipulation, the law allows them a reasonable time to do so. What is a reasonable time depends undoubtedly upon the nature and character of the thing to be done, the circumstances of the particular case, and the difficulties surrounding and attending its accomplishment. As an abstract question, what is a reasonable time for performance may be one of law; but unless the facts upon which its determination depends are admitted, its determination involves a mixed question of law and fact, and must be determined by the jury, under the instructions of the court, where the pleadings and evidence are sufficient to present an issue of fact in regard to it.

This defense involves affirmative matter on the part of the defendants; and unless the court could say that a reasonable time for compliance with their part of the contract had not elapsed when the suit was brought, it was incumbent upon appellees to allege and prove the facts showing there had not been. The vague and indefinite averment of the answer should, on exception, have been held insufficient; and much more clearly must it be held, that the evidence utterly failed to support this defense. A few words will, we think, fully demonstrate this. In the contract for locating these certificates, Bullion stipulated to locate, survey, and return the field-notes to the General Land Office, ready for patenting, within the period of four months from the date of the contract.

The certificates had been returned, and eight or nine of them patented, at the date of the contract with appellant. Now, surely if four months was sufficient time to locate and return the field-notes for twenty-two sections ready for patenting, there can be no hesitancy in saying that four years would be more than a reasonable time for getting patents on thirteen or fourteen sections already returned to the General

Land Office.   Again, more than a year before the suit was brought, Bullion wrote appellant that he had learned that the commissioner was patenting the certificates.   Certainly, no one will insist that a year was not more than sufficient time to have gotten the patents from the office where they were issued.

Conceding that the court might have refused to cancel the contract on appellee's proffer of performance in his amended answer, we think it too clear for argument, that it was not shown in the answer, or by the evidence adduced on the trial, that Bullion was even then prepared to comply with his contract, or had a reasonable prospect of being able to do so. He admits that he did not get the patents issued after the date of the contract, but claims that he authorized appellant to get them.   It is not shown that appellant agreed to do so, or that he could have gotten them on Bullion's order.   There is a strong inference from his own testimony that his contract with J. P. Martin, as agent of Mrs. Murrah, owing probably to the delay in its fulfillment, had been repudiated; but if not, there was no attempt to show that Martin was authorized to contract for Mrs. Murrah, or if so, that she could bind the heirs of Pendleton Murrah, or that Mrs. Murrah or Pendleton Murrah ever had any interest in the five certificates patented to the Southern Pacific Railway Company, or that Bullion had any title to the other land which he proffered to convey.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.