HUMBLE EXPLORATION
CO., Appellant,

v.

AMCAP PETROLEUM ASSOCIATES–1977, Amcap Petroleum Associates-1978, Amcap Petroleum Associates-1978B, Fayette Oil Company, American Falcon Oil Company, American Hawk Oil Company, Fairway Land Company and American Eagle Oil Company, and Penn Exploration, Ltd., Appellee.

No. 05–82–00604–CV.

Court of Appeals of Texas,
Dallas.

Sept. 28, 1983.

Rehearing Denied Oct. 25, 1983.

Charles F. Guittard, Guittard & Hyden, Dallas, for appellant.

Natalie S. Taylor, Akin, Gump, Strauss, Hauer & Feld, Michael V. Powell, Rain, Harrell, Emery, Young & Doke, Dallas, for appellee.

Before STOREY, WHITHAM and ROWE, JJ.

ROWE, Justice.

This is a summary judgment case. Appellees, as Non-operators, brought suit against appellant, Humble, for a declaratory judgment construing in ten prospect agreements, tax provisions affecting the "payout" date for vesting of Humble's twenty-five percent reversionary "back-in" interest. The trial court, finding the applicable provisions unambiguous, held as a matter of law that under the agreements "the tax imposed by the Crude Oil Windfall Profit Tax Act of 1980, 26 U.S.C. § 4986, is a 'production,' 'severance' or other 'similar' or 'applicable' tax measured by pro-

duction that ... constitutes a cost that plaintiffs and Intervenor (Non-operators) are entitled to fully recoup in arriving at 'payout' under each of the said ten prospect agreements before Humble Exploration, Inc.'s ('Humble') reversionary or back-in interest vests in Humble." With this result we agree. We overrule Humble's contentions to the contrary, as well as other contentions of Humble respecting an award of attorney's fees and denial of a continuance, and affirm the summary judgment.

Each of the ten prospect agreements between the parties contains a definition of "payout". While these definitions fall basically into four separate categories, for purposes of this opinion we formulate the following common paraphrase:

'Payout' shall be the date upon which Non-operators shall have received from the net proceeds from the sale of 75% of all production of oil, gas and other hydrocarbons from any well, *after deduction of production, severance or other similar taxes*,[1] an amount equal to all costs incurred and paid by Non-operators in connection with the drilling, completing, equipping, and operating such well prior to payout.

Humble seeks to have the summary judgment set aside by arguing that: (1) material facts do exist with respect to Humble's claim of a special meaning for or a trade usage of the language in question and with respect to facts and circumstances surrounding execution of the agreements; (2) the terms or the prospect agreements applicable to taxes are ambiguous with respect to whether the windfall profit tax is includable, so a proper construction requires resort to parol evidence; and (3) as a matter of law the windfall profit tax is neither a "production", "severance," "similar" or "applicable" tax within the meaning of the prospect agreements.

To answer Humble's first two contentions for setting aside the summary judgment, we apply that standard deemed appropriate by our Supreme Court for the interpretation of oil and gas contracts in *Sun Oil Company (Delaware) v. Madeley,* 626 S.W.2d 726 (Tex.1981), and find that the language used in the definition of "payout" is unambiguous, non-technical, and without specialized meaning. Because the language used is fairly susceptible of only one meaning, consideration cannot be given to facts and circumstances surrounding execution of the agreements. Trade usage considerations are of no help in this record because the windfall profit tax was not enacted until after execution of the prospect agreements. *Corso v. Carr,* 634 S.W.2d 804, 808 (Tex.App.—Fort Worth 1982, writ ref'd n.r. e.). The written words of the prospect agreements are alone deemed to express the intention of the parties, *Madeley,* and the construction of the writings is a question of law for the court. *Myers v. Gulf Coast Minerals Management Corp.,* 361 S.W.2d 193 (Tex.1962). Humble's first through seventh points of error are overruled.

As for Humble's third contention for setting aside the summary judgment, we find no material fact in dispute on the controlling issue of the treatment to be afforded the windfall profit tax under the prospect agreements. At the time each prospect agreement was executed the federal windfall profit tax was nonexistent and beyond the specific contemplation of the parties. The only production and severance taxes then deductible under the definition of "payout" were taxes imposed by the State of Texas, that is, the Texas occupation tax on oil and the Texas tax on producers of natural gas. Yet, the agreements do reflect that the parties anticipated and sought to provide for the possibility that, before payout, other but like taxes would be levied. Undisputedly, many differences as well as similarities exist between the old state taxes and the new federal tax.

---

1. Other variations concerning deductions for taxes are *"after deducting production, severance, gross production and other similar taxes imposed upon or measured by production;"*

*"after deduction of all severance, gross production and similar taxes on or measured by production;"* and in one instance, *"after the deduction of all applicable taxes."*

Whether these similarities generally outweigh the dissimilarities is in dispute between the parties, and disputes do exist as to whether the windfall profit tax can properly be denominated either as a "severance" or as a "production" tax. We are not obliged, however, to decide these issues one by one, because when read in full context with all operative provisions, the provision for the deductibility of taxes from the net proceeds of production clearly encompasses the windfall profit tax. This is so because the overall intent, as expressed objectively by the parties in their written agreements, is that the investment outlay made by Nonoperators must be repaid in full *from the net proceeds of production* before Humble becomes entitled to participate under the reversionary interest. To the extent both the payment of the windfall profit tax and the Texas occupation tax on oil are made the liability of the first purchaser of production, the proceeds of production are always net of both these taxes. This similarity of effect on the stated scheme of oil well development is the controlling feature which requires that both these taxes be treated as "applicable" and as deductible under the definition of "payout" in all the prospect agreements.

■ Humble also complains of the assessment against it of the Non-operator's attorney's fees, arguing that presentment of claim was not established as required by Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1982–1983). This argument fails because the record discloses that Non-operators did request under Tex.R.Civ.P. 169 that Humble admit not only that it had signed all the prospect agreements, but also that it had excluded and would continue to exclude those payments of windfall profit tax attributable to Nonoperators' share of production. This was a sufficient proof of presentment. *Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex.1981); *Thompson v. Starr Realco, Inc.,* 648 S.W.2d 25, 29 (Tex.App.—Tyler 1983, writ ref'd n.r.e.); *Welch v. Gamage,* 545 S.W.2d 223, 226 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.). Humble's eighth point of error is overruled.

■ Lastly, Humble would have us reverse and remand because the trial court refused to grant additional requested time for discovery sought by a third motion for continuance. Applying the long established rule that the denial of a continuance rests within the discretion of the trial judge and will be reviewed only for abuse of discretion, we hold after a pertinent review of the record that the trial court did not abuse its discretion in this instance. *Zale Corporation v. Rosenbaum,* 517 S.W.2d 440 (Tex. Civ.App.—El Paso 1974), *reversed on other grounds,* 520 S.W.2d 889 (Tex.1975); *Shaw v. Transport Life Insurance Company,* 498 S.W.2d 495 (Tex.Civ.App.—Texarkana 1973, no writ). Also, under our holding, the evidence sought to be discovered by Humble had no bearing on the controlling issue in the case. Humble's ninth point of error is overruled.

Affirmed.