WESTERNGECO, L.L.C. and
Schlumberger Technology
Corporation, Appellants

v.

INPUT/OUTPUT, INC., Appellee.

No. 14–06–00357–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 24, 2008.

Kendall Matthew Gray, Joel W. Mohrman, Houston, TX, for appellants.

Charles S. Baker, Houston, TX, for appellees.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

This case arises out of a dispute over the terms of a settlement agreement between business competitors. One party brought a declaratory judgment action seeking various declarations regarding the terms of the settlement agreement. The trial court granted the plaintiff's motion for summary judgment, impliedly making the three declarations sought in the motion. The defendants never sought declaratory relief; rather, they asserted in a cross-motion for summary judgment that all of the requested declarations should be denied as a matter of law. We reverse and render in part and affirm in part.

FACTUAL AND PROCEDURAL BACKGROUND

In 1998, appellant Schlumberger Technology Corporation ("Schlumberger") filed suit asserting various contract and tort claims against appellee Input/Output, Inc. ("Input") and former Schlumberger employees working for Input. Schlumberger sought damages and also asked the court to permanently enjoin Input from (1) using or disclosing Schlumberger's confidential information and (2) soliciting for employment any Schlumberger employee who is involved in the design of seismic data acquisition systems or who has been exposed to confidential Schlumberger information regarding seismic data acquisition systems. To resolve the 1998 lawsuit the parties entered into a settlement agreement in November 1998 ("Settlement Agreement"). The material terms are as follows:

This Settlement Agreement is made by and among Schlumberger Technology Corporation ("Schlumberger"), a Texas corporation . . ., acting on behalf of itself and its Affiliates; Input/Output, Inc. ("I/O"), a Delaware corporation . . ., acting on behalf of itself and its Affiliates; and the following individuals: Rex K. Reavis, James "Jerry" Iseli, and Kambiz Afkhami (these three individuals collectively referred to herein as the "Individual Defendants").

WHEREAS, the Geco–Prakla division of Schlumberger ("Geco–Prakla") provides seismic services to the oil industry, and I/O supplies seismic equipment and systems to various companies, including Schlumberger, that provide such seismic services (such seismic services and seismic equipment and systems referred to herein as "Seismic Field"); . . .

. . .

4. I/O agrees that it will not offer employment to or engage as a consultant any current or former employee

of Schlumberger who is working or has worked in the Seismic Field unless at least two (2) years have passed from the date such employee or former employee either ceased working for Schlumberger in the Seismic Field or has left Schlumberger.

. . .

13. This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective successors in interest and legal representatives.

. . .

15. As used herein, "Affiliate" means any present or future corporation that directly or indirectly controls, is controlled by, or is under common control with either party, where "control" means the ownership, direct or indirect, of at least 50% of voting securities of such corporation.

Approximately two years later, in September 2000, Schlumberger and Baker Hughes, Inc. entered into a Master Formation Agreement, in which Schlumberger transferred to a joint venture all of its seismic business assets, including but not limited to, contracts, claims against third parties, intellectual property, and information technology. The summary-judgment evidence does not show whether appellant WesternGeco, L.L.C. ("WesternGeco") is the joint venture to which this transfer was made, and it does not reflect whether WesternGeco is an affiliate of Schlumberger.[1] For the purposes of this appeal, we presume, without deciding, that Schlumberger and Baker Hughes created WesternGeco to handle their seismic business and that WesternGeco is an "Affiliate" of Schlumberger, as defined in the Settlement Agreement.

After WesternGeco threatened to sue Input to enforce the above paragraph 4 of the Settlement Agreement (hereinafter "Paragraph 4"), Input filed this lawsuit against Schlumberger and WesternGeco (hereinafter the "Schlumberger Parties") asking the court to make various declarations regarding the proper construction of Paragraph 4 and also seeking attorney's fees.[2] The Schlumberger Parties never asserted a counterclaim for declaratory relief; they simply argued that, as a matter of law, Input was not entitled to the relief it sought.

Input filed a motion for summary judgment seeking a declaration that the Settlement Agreement is void on the alleged grounds that it is (1) an illegal restraint of trade, and (2) a covenant not to compete that violates section 15.50 of the Texas Business and Commerce Code. The trial court denied this motion.

Input filed a second motion for summary judgment asserting that the trial court should render a summary judgment making the following declarations:

(1) Because Paragraph 4 is silent as to its duration, either party may terminate it at will.

(2) Alternatively, any implied reasonable time period during which Paragraph 4 was not terminable at will

---

1. The trial court struck two paragraphs from the affidavit of Dale Gaudier, in which Gaudier stated that WesternGeco is the successor-in-interest to Schlumberger's seismic business and that Schlumberger owns at least 50% of the voting securities in WesternGeco. Although Schlumberger and WesternGeco challenge this evidentiary ruling on appeal, we

need not address this issue to adjudicate this appeal.

2. Although the parties often refer generally to the Settlement Agreement, it is clear that the implied declarations before this court on appeal pertain only to Paragraph 4.

already has expired so that Paragraph 4 is now terminable at will.

(3) Paragraph 4 applies to Schlumberger employees who are within its scope but not to WesternGeco employees.

Input also sought attorney's fees. In its second motion, Input did not seek a final summary judgment because, even if the trial court granted all the relief sought in this motion, Input still had pending requests in its petition for additional declaratory relief. The Schlumberger Parties filed a cross-motion for summary judgment, in which they argued that, as a matter of law, the trial court should deny all of the requests for declaratory relief in Input's petition and award Chapter 37 attorney's fees to the Schlumberger Parties. In this cross-motion the Schlumberger Parties did seek a final judgment.

After a hearing on these cross-motions, the trial court signed an interlocutory order in which it granted Input's motion and did not mention the Schlumberger Parties' motion. Input then filed a motion to modify the summary-judgment order. Input asked the trial court to modify its order to (1) deny the Schlumberger Parties' motion, (2) deny Input's request for Chapter 37 attorney's fees, and (3) deny all of Input's claims the court did not expressly grant in the partial summary judgment in its favor. The trial court granted this motion and rendered a final judgment as requested. Even though in its motion for summary judgment Input sought alternative and inconsistent declarations, the trial court did not make any declarations in its judgment. Instead, the court simply stated that it granted Input's second motion for summary judgment. No party has complained about the form of the trial court's judg-

ment; therefore, we need not address the omission of express declarations in the court's declaratory judgment. We treat the trial court's judgment as having impliedly made the three declarations requested in the motion. The Schlumberger Parties have appealed from the trial court's final judgment.[3] Input has not appealed.

## II. STANDARDS OF REVIEW

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex.2007).

We may review the trial court's denial of the Schlumberger Parties' motion because in it they sought a final summary judgment. *See CU Lloyd's of Texas v. Feldman*, 977 S.W.2d 568, 569 (Tex.1998). When both parties move for summary judgment, each party must carry its own burden, and neither can prevail because of the failure of the other to discharge its

---

3. The Schlumberger Parties seek a reversal of the trial court's judgment for lack of a justiciable controversy, or in the alternative, a reversal and rendition of judgment based on their cross-motion. No party has sought a reversal and remand to the trial court.

burden. *INAC Corp. v. Underwriters at Lloyd's,* 56 S.W.3d 242, 247 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Because each party was a movant, the burden for each was the same: to establish entitlement to a summary judgment by conclusively proving all the elements of the claim or defense as a matter of law. *Id.*

### III. ISSUES AND ANALYSIS

**A. Is there a justiciable case or controversy to support this court's jurisdiction?**

The Schlumberger Parties have filed a motion to dismiss this appeal for lack of jurisdiction asserting that there is no case or controversy. The Texas Declaratory Judgment Act is a remedial statute whose purpose is to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 1997); *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex.1995). We must construe and administer this statute liberally. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b); *Bonham State Bank,* 907 S.W.2d at 467. A court of record, acting within its jurisdiction, has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. TEX. CIV. PRAC. & REM.CODE ANN. § 37.003(a). A person with an interest in a written contract may ask a court to determine any question of construction or validity arising under the contract and obtain a declaration of rights, status, or other legal relations thereunder. *Id.* § 37.004(a). A contract may be construed either before or after a breach. *Id.* § 37.004(b).

A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bon-*

*ham State Bank,* 907 S.W.2d at 467. For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Id.* The Schlumberger Parties have described Input as a "business competitor" who had been "poaching" Schlumberger employees in 1998 in an effort to have these employees work on seismic systems that would compete directly with the systems on which they had worked at Schlumberger, making disclosure of Schlumberger's confidential information inevitable. Schlumberger filed suit against Input and others, and the parties settled that case in 1998 by means of the Settlement Agreement. The summary-judgment evidence contains the affidavit of Input's Vice President and General Counsel, in which he testifies as follows:

It is [Input's] belief that it has fully performed all of its obligations under the Settlement Agreement, and the terms thereof, including Paragraph 4, are no longer in force. [WesternGeco], on the other hand, has represented to [Input] that it is the successor-in-interest to Schlumberger's rights under the Settlement Agreement and is entitled to and intends to enforce the language of Paragraph 4. [WesternGeco] has asserted to [Input] that the language of Paragraph 4 prevents, in perpetuity, [Input] from hiring any current or former employee of [WesternGeco], or any of its affiliates, who have any connection to the seismic industry. [WesternGeco] has also threatened to bring suit against [Input] to enforce the provision.

No summary-judgment evidence contradicts this testimony. Input also attached to its motion for summary judgment a prior filing in the trial court in which the Schlumberger Parties state that Input "declares that it is suffering from 'a material

competitive disadvantage in the seismic industry' and has apparently determined that it must break its promise [not to solicit for employment any of Schlumberger's employees who worked in the seismic field until two years after they have left the company]...."[4]

The undisputed summary-judgment evidence supports a conclusion that Input wants to hire the Schlumberger Parties' employees in the Seismic Field and that WesternGeco is threatening to sue Input to prevent it from taking such action. WesternGeco asserts that its employees are protected by Paragraph 4 because they constitute "current or former employee[s] of Schlumberger" under Paragraph 4. Even though WesternGeco did not exist in 1998 when the Settlement Agreement was signed, WesternGeco asserts that Schlumberger entered into the Settlement Agreement on its behalf.

The Schlumberger Parties do not argue that Input must offer employment to or engage as a consultant a Schlumberger or WesternGeco employee who has worked or is working in the Seismic Field before there can be a justiciable controversy. The Schlumberger Parties acknowledge that their construction of the Settlement Agreement differs significantly from Input's construction; however, they contend that this controversy is not justiciable because (1) "[Input] has not identified—even anonymously—one current or former Schlumberger employee that it would otherwise hire if not for the [Settlement Agreement]," (2) "[t]here is no indication that [Input] is threatening to hire any particular current or former Schlumberger employee," and (3) Input has not shown that it has "any present or prospective intention to violate the Settlement Agreement." Schlumberger argues that to show

a justiciable controversy, Input must identify in some way a current or former Schlumberger employee that it wants to hire but cannot hire if Paragraph 4 is still in effect. We conclude Input is not required to do so.

This case presents a bona fide, concrete controversy ripe for resolution by way of declaratory judgment. *See Bonham State Bank,* 907 S.W.2d at 467. The record reflects a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *See id.; City of Dallas v. VSC, LLC,* 242 S.W.3d 584, 596-97 (Tex.App.-Dallas, 2008, no pet. h.); *Monk v. Pomberg,* No. 01–05–00429–CV, —— S.W.3d ——, ——, 2007 WL 926491, at *6 (Tex.App.-Houston [1st Dist.] Mar. 29, 2007, no pet.). Furthermore, presuming, without deciding, that it is necessary to show a justiciable controversy, the evidence mentioned above indicates that Input is threatening to hire current or former employees of the Schlumberger Parties whom the Schlumberger Parties claim are covered by Paragraph 4. A justiciable controversy exists. Therefore, we deny the Schlumberger Parties' motion to dismiss.

## B. Did the trial court err by concluding that Paragraph 4 has been impliedly terminable at will since the execution of the Settlement Agreement?

Under their first issue, the Schlumberger Parties challenge the trial court's implied declaration that Paragraph 4 is impliedly terminable at will by either party. In Paragraph 4, Input agreed not to offer employment to or engage as a consultant any current or former employee of Schlumberger who is working or has worked in the Seismic Field unless at least

---

**4.** The Schlumberger Parties are quoting from an affidavit that Input filed in support of its first motion for summary judgment. This exhibit is not a judicial admission but it is part of the summary-judgment evidence.

two years have passed from the date such employee or former employee either ceased working for Schlumberger in the Seismic Field or has left Schlumberger. The Settlement Agreement is silent as to the duration of Input's covenant in Paragraph 4. The trial court ruled as a matter of law that there is an implied contractual term under which Paragraph 4 is terminable at will by either party.

■ There is uncertainty as to the legal standard for determining the duration of an agreement that contains no express term. In some cases courts indicate that the implied term should be terminable at will, while in other cases courts state that the implied term should be for a reasonable time. *See Clear Lake City Water Auth. v. Clear Lake Utilities Co.*, 549 S.W.2d 385, 390–91 (Tex.1977). In one of the cases upon which Input relies, *Clear Lake City Water Authority v. Clear Lake Utilities Co.*, the Texas Supreme Court noted both lines of cases. *See id.* However, the *Clear Lake City Water Authority* court stated that it did not need to decide which line of cases to follow because the court was required to imply the contract was terminable at will given that one of the parties was a governmental entity incapable of contracting for a reasonable time for performance. *See id.* Because

the high court's holding was based on one of the parties' status as a governmental entity, *Clear Lake City Water Authority* is not on point in the case at hand, and the court's statements regarding the two lines of cases are obiter dicta. *See id.* Likewise, the other statements from cases upon which Input relies for implying a terminable-at-will provision are either based on one of the parties' status as a governmental entity or are obiter dicta.[5] Neither the *Clear Lake City Water Authority* opinion nor any other Texas case appears to explain how courts should determine whether to imply that an agreement is terminable at will or to imply that it lasts for a reasonable time. However, we need not address how this determination should be made today.

■ To imply a term into an agreement, it must appear that it is necessary to do so in order to effectuate the purposes of the contract as a whole as gathered from the written instrument. *See HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 888 (Tex. 1998); *Fein v. R.P.H., Inc.,* 68 S.W.3d 260, 268 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). In the Settlement Agreement, the parties settled a lawsuit in which Schlumberger sought a permanent injunction precluding Input from (1) using or disclosing Schlumberger's confidential in-

---

5. One of these cases is based on one of the parties' status as a governmental entity. *See City of Corpus Christi v. Taylor,* 126 S.W.3d 712, 722–23 (Tex.App.-Corpus Christi 2004, pet. withdrawn). Others are cited for statements that are obiter dicta. *See Kennedy v. McMullen,* 39 S.W.2d 168, 174 (Tex.Civ.App.-Beaumont 1931, writ ref'd) (overruling appellate contention based on appellants' inability to terminate contract unless they stopped operating a bus line while stating in dicta that generally a contract that does not specify duration may be terminated at will); *Farah v. Mafrige & Kormanik, P.C.,* 927 S.W.2d 663, 678 (Tex. App.-Houston [1st. Dist.] 1996, no writ) (stating that contract was also terminable at will only after concluding the contract

was too indefinite to be enforced); *Ingram Freezers v. Atchison, T & S.F. Ry. Co.,* 464 S.W.2d 915, 920 (Tex.Civ.App.-Dallas 1971, writ ref'd n.r.e.) (concluding that trial court correctly rendered directed verdict because there was no agreement to furnish rail service and then stating that another reason for affirming the directed verdict is that any such agreement would have been terminable-at-will); *Tanenbaum Textile Co. v. Sidran,* 423 S.W.2d 635, 637 (Tex.Civ.App.-Dallas 1967, writ ref'd n.r.e.) (indicating that agreement was terminable at will in the course of holding that contract was not valid for being indefinite because it did not specify a time for performance).

formation and (2) soliciting for employment at Input any Schlumberger employee who is involved in the design of the seismic data acquisition systems or who has been exposed to confidential Schlumberger information regarding seismic data acquisition systems. In the Settlement Agreement, Input agreed that it would not solicit or induce, directly or indirectly, the use or disclosure of certain confidential information belonging to Schlumberger. This covenant remains in effect beyond December 1, 2001, until that information, as defined in the Settlement Agreement, no longer exists. Part of Input's agreement in Paragraph 4 is to not offer employment to any current Schlumberger employee who is working in the Seismic Field unless at least two years have passed from the date the employee either stopped working for Schlumberger in the Seismic Field or left Schlumberger. Implying an agreement that Input's covenant in Paragraph 4 is terminable at will is not necessary to effectuate the purposes of the Settlement Agreement as a whole as gathered from the written instrument; in fact, it would contradict these purposes. Therefore, we conclude that the trial court erred by implicitly declaring an implied term that Paragraph 4 is terminable at will by either party. *See HECI Exploration Co.,* 982 S.W.2d at 888; *Fein,* 68 S.W.3d at 268. The trial court should have denied Input's motion in this regard and granted the Schlumberger Parties' motion seeking a take-nothing judgment as a matter of law as to this requested declaration. We sustain the Schlumberger Parties' first issue to this extent.

**C. Did the trial court err by concluding that Paragraph 4 is terminable at will because any implied reasonable duration has expired as a matter of law?**

Under their first issue, the Schlumberger Parties also challenge the trial court's implied declaration that Input's covenant under Paragraph 4 is terminable at will because any reasonable time period during which Paragraph 4 was not terminable at will already has expired, so that Paragraph 4 is now terminable at will. Though obiter dicta in *Clear Lake City Water Authority* suggests such an implied duration may be possible, precedent from the Texas Supreme Court and this court shows that, if the "reasonable duration" rule applies, this court would imply that Paragraph 4 expires after a reasonable period of time rather than becoming terminable at will after a reasonable time. *Compare Clear Lake City Water Auth.,* 549 S.W.2d at 390–91 (stating in dicta that, under one line of cases, courts imply a reasonable duration during which time the agreement is not terminable at will), *with Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 16 (Tex.1957) (stating that "[w]hen the parties omit an express stipulation as to time, it is in accord with human experience and accepted standards of law for us to assume that they meant whatever term of days or years might be reasonable in the light of the circumstances before them at the date of the contract"); *Cheek v. Metzer,* 116 Tex. 356, 291 S.W. 860, 864 (Tex.App.1927) (holding that, in the absence of a stipulation as to the time for performing the terms of a contract, the law allows a reasonable time); *Hart v. Bullion,* 48 Tex. 278, 289 (Tex.1877) (stating that, where a contract does not fix a time for performance, the law allows a reasonable time for performance); *Metromarketing Services, Inc. v. HTT Headwear, Ltd.,* 15 S.W.3d 190, 195–96 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (stating that when the parties do not fix the time of performance, courts imply a reasonable time for performance). For this reason, the trial court erred in ruling

as a matter of law that Paragraph 4 is terminable at will because any implied reasonable time period during which Paragraph 4 was not terminable at will already has expired. The trial court should have denied Input's motion in this regard [6] and granted the Schlumberger Parties' motion seeking a take-nothing judgment as a matter of law as to this requested declaration. We sustain the Schlumberger Parties' first issue to this extent.

**D. Did the trial court err by concluding that Paragraph 4 applies to Schlumberger employees who are within its scope but not to WesternGeco employees?**

Under their third issue, the Schlumberger Parties also challenge the trial court's implied declaration that Paragraph 4 applies to Schlumberger employees who are within its scope but not to WesternGeco employees.[7] Input's covenant in Paragraph 4 covers "any current or former employee of Schlumberger who is working or has worked in the Seismic Field unless at least two (2) years have passed from the date such employee or former employee either ceased working for Schlumberger in the Seismic Field or has left Schlumberger." In the Settlement Agreement, "Schlumberger" is defined as "Schlumberger Technology Corporation."

WesternGeco is a separate corporate entity from Schlumberger, and there has been no pleading or proof of any theory by which the corporate veil between these two entities may be pierced. The trial court correctly determined that under the unambiguous language of the Settlement Agreement, Paragraph 4 applies to Schlumberger employees who are within its scope but not to WesternGeco employees. *See Humble Explor. Co. v. Amcap Petroleum Associates–1977*, 658 S.W.2d 860, 862 (Tex. App.-Dallas 1983, writ ref'd n.r.e.) (applying unambiguous contractual definition in declaratory-judgment case).

The Schlumberger Parties assert that the term "Schlumberger," as used in the Settlement Agreement, must include WesternGeco to avoid rendering meaningless the language making WesternGeco a party to the Settlement Agreement. The Schlumberger Parties base this argument on the following reasoning:

- The Settlement Agreement defines "Affiliates" as "any present or future corporation that directly or indirectly controls, is controlled by, or is under common control with either party, where 'control' means the ownership, direct or indirect, of at least 50% of voting securities of such corporation."

**6.** In addition, even if the trial court had ruled that any reasonable duration for Input's covenant in Paragraph 4 has expired as a matter of law, this ruling still would have been error. If a reasonable time is implied, the determination of what is a reasonable time is generally a question of fact that is based on the circumstances surrounding the adoption of the agreement, the situation of the parties when they entered into the agreement, and the subject matter of the agreement. *See Hall*, 308 S.W.2d at 16–17; *Cheek*, 291 S.W. at 864; *Hart*, 48 Tex. at 289; *Metromarketing Services, Inc.*, 15 S.W.3d at 195–96. Although summary judgment would be possible if the evidence is uncontroverted regarding these mat-

ters, the only evidence that Input provided the trial court in this regard is the Settlement Agreement itself. Lacking any extrinsic evidence bearing on this issue, the trial court could not have determined as a matter of law that any reasonable duration for Input's covenant in Paragraph 4 has expired. *See Hall*, 308 S.W.2d at 16–17; *Cheek*, 291 S.W. at 864; *Hart*, 48 Tex. at 289; *Metromarketing Services, Inc.*, 15 S.W.3d at 195–96.

**7.** They also argue that Input's affiliates are subject to the Settlement Agreement. However, because the trial court made no such implied declaration, that issue is not before us.

- WesternGeco is an "affiliate" of Schlumberger because it is a future corporation that is controlled by Schlumberger, where "control" means the ownership, direct or indirect, of at least 50% of voting securities of such corporation.
- The Settlement Agreement states that it was made by, among other parties, "Schlumberger Technology Corporation ('Schlumberger'), a Texas corporation ..., acting on behalf of itself and its Affiliates ..."
- Because Schlumberger entered into the Settlement Agreement on behalf of its Affiliates, including WesternGeco, the term "Schlumberger," as used in the Settlement Agreement, includes WesternGeco.
- The Schlumberger Parties' proffered interpretation is necessary to give meaning to the contractual language making WesternGeco a party to the Settlement Agreement because, if "Schlumberger" does not include WesternGeco, then the Settlement Agreement imposes no burden on WesternGeco and gives no benefit to WesternGeco. The Schlumberger Parties assert that this result would render meaningless the language making WesternGeco a party to the Settlement Agreement.

■ The Settlement Agreement contains language under which Schlumberger purportedly "makes" the agreement "on behalf of" its future affiliates. However, when Schlumberger entered into the Settlement Agreement in 1998, WesternGeco, allegedly one of its "future affiliates," did not exist. Because WesternGeco and Schlumberger are separate entities, a contract with Schlumberger is generally not a contract with WesternGeco. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex.2007). Moreover, because a non-existent entity cannot enter into a contract, Schlumberger could not and did not bind WesternGeco merely by signing a contract in which Schlumberger states that it is acting on behalf of itself and its future affiliates. The Schlumberger Parties' argument fails because they seek to give meaning to language that could not have been effective as to WesternGeco.[8]

Furthermore, even presuming that the Settlement Agreement includes WesternGeco as a party, that would not render the language meaningless or leave WesternGeco without a burden or benefit, as the Schlumberger Parties urge, because the Settlement Agreement still would refer to WesternGeco in stating that the agreement is binding upon and inures to the benefit of the parties thereto and that the parties agree that Texas law will apply.

**8.** Even if Schlumberger stated in the Settlement Agreement that its non-existent, future affiliates are parties to the Settlement Agreement, that would not bind these future affiliates to the agreement unless they are so bound under a legal theory such as piercing the corporate veil, agency, estoppel, or ratification. *See, e.g., CNOOC Southeast Asia Ltd. v. Paladin Res. (SUNDA) Ltd.,* 222 S.W.3d 889, 899 (Tex.App.-Dallas 2007, pet. denied) (stating that to bind an affiliate under agency principles, there must be evidence of conduct by the affiliate that would give rise to actual or apparent authority). However, any facts that might bind WesternGeco under these theories would not have come into existence until after WesternGeco was created. The trial court's third implied declaration addresses the meaning of Paragraph 4 and does not address whether, after its creation, WesternGeco engaged in acts that would bind it to the Settlement Agreement under one of these theories. Therefore, we need not address these theories; rather, we are addressing the Schlumberger Parties' argument that we must interpret "Schlumberger" to include WesternGeco, because otherwise the language making future affiliates parties to the Settlement Agreement would be rendered meaningless.

The statement that the agreement is binding upon WesternGeco could refer to WesternGeco's binding agreement that Texas law governs. In addition, because the Settlement Agreement seeks to protect certain confidential information belonging to Schlumberger, these protections could inure to the benefit of WesternGeco.

In sum, the unambiguous definition of "Schlumberger" in the Settlement Agreement does not include alleged future affiliates such as WesternGeco, and Paragraph 4 does not apply to WesternGeco employees. In addition, even presuming, without deciding, that WesternGeco is an affiliate on whose behalf Schlumberger entered into the Settlement Agreement, this fact would not render any language of the Settlement Agreement meaningless. Accordingly, we overrule the Schlumberger Parties' challenge to the trial court's implied declaration that Paragraph 4 applies to Schlumberger employees who are within its scope but not to WesternGeco employees. We have addressed all the issues necessary to the disposition of this appeal.[9]

## IV. CONCLUSION

We deny the Schlumberger Parties' motion to dismiss for lack of jurisdiction because a justiciable controversy exists. The trial court erred in impliedly declaring as a matter of law that (1) Paragraph 4 is terminable at will by either party and (2) alternatively, Paragraph 4 is terminable at will because any implied reasonable time period during which Paragraph 4 was not terminable at will already has expired. Accordingly, we reverse these portions of the trial court's judgment and render judgment that Input take nothing as to these two requested declarations. Under the unambiguous language of the Settlement Agreement, the trial court correctly determined that Paragraph 4 applies to Schlumberger employees who are within its scope but not to WesternGeco employees. Accordingly, we affirm the remainder of the trial court's judgment.

GUZMAN, J., concurring.

EVA M. GUZMAN, Justice concurring.

I join the majority's opinion expressed in sections III. A, III. B, and III. C, and *concur in the result reached in section III. D.*

The Settlement Agreement was made between Schlumberger, acting on behalf of itself and its Affiliates, and Input, acting on behalf of itself and its Affiliates. These parties agreed that the term "Affiliates" would refer to "any present or future corporation that directly or indirectly controls, is controlled by, or is under common control with either party, where 'control' means the ownership, direct or indirect, of at least 50% of voting securities of such corporation." In addition, Input agreed:

---

9. Input asserts that the issue of whether Paragraph 4 is an illegal restraint of trade is before this court. We disagree. This issue was a ground in Input's first motion for summary judgment, which the trial court denied. The Schlumberger Parties have not argued on appeal that the trial court erred in denying Input's first motion for summary judgment. The illegal-restraint-of-trade issue was not a ground in Input's second motion for summary judgment, which the trial court granted. Furthermore, by stating that the grant of its second motion and denial of the Schlumberger Parties' motion "ended the dispute" and by moving the trial court to render a take-nothing judgment as to all the declaratory relief sought in Input's petition but not in its second motion, Input waived all of these requests, including the requested declaration that Paragraph 4 is an illegal restraint of trade. This reality is not altered by the Schlumberger Parties' appeal of the trial court's final judgment or by their briefing on appeal in support of the proposition that Paragraph 4 is not an illegal restraint of trade.

that it will not offer employment to or engage as a consultant any current or former employee of Schlumberger who is working or has worked in the Seismic Field unless at least two (2) years have passed from the date such employee or former employee either ceased working for Schlumberger in the Seismic Field or has left Schlumberger.

Settlement Agreement, ¶ 4. And in paragraph 13 of the Settlement Agreement, Schlumberger and Input agreed, on their own behalf and on behalf of their respective Affiliates, that "[t]his Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective successors in interest and legal representatives."

I agree with the majority that WesternGeco is not encompassed within the parties' agreed definition of the term "Schlumberger," which is instead defined by the parties as "Schlumberger Technology Corporation, a Texas corporation having a place of business" at a specific address in Sugar Land, Texas. Thus, I agree that Paragraph 4 of the Settlement Agreement requires Input to refrain from offering employment to current or recent employees of Schlumberger Technology Corporation, but does not prohibit Input from hiring WesternGeco's current or recent employees in the Seismic Field.

For reasons that differ somewhat from those expressed by the majority, I also agree that it is unnecessary to expand the definition assigned by the parties to the term "Schlumberger" in order to give full effect to the Agreement. The purpose of the Agreement was "to settle and compromise the issues raised in the [Fort Bend] Lawsuit...." Thus, the unambiguous language of the Agreement manifests the parties' intent to resolve the existing dispute, i.e., the alleged "poaching" of Schlumberger employees by Input. The record does

not indicate that any issue was raised in the Fort Bend Lawsuit concerning Input's recruitment of WesternGeco's present or former employees. Although similar, that is a separate dispute not addressed in the former lawsuit or in the Settlement Agreement. This construction, which is required by the plain meaning and the defined terms of the Settlement Agreement, does not deprive WesternGeco of any benefit actually conferred by the Agreement.

Because it is unnecessary to the disposition of the case, I would not address the question of whether the Agreement binds WesternGeco in the absence of pleading and proof of legal theories such as piercing the corporate veil, agency, estoppel, or ratification. Regardless of whether WesternGeco is bound by the Agreement, the Agreement does not bar Input from hiring WesternGeco employees. I therefore concur in the result reached in section III. D.