Affirmed and Majority Opinion and Concurring Opinion
filed September 29, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00093-CV

____________

 

VICTOR RODARTE, Appellant

 

V.

 

INVESTECO GROUP, L.L.C., MORAD
MEKHAIL, INDIVIDUALLY AND AS TRUSTEE OF CERTAIN REAL PROPERTY DESCRIBED AS THE
SOUTH ONE-HALF (2) OF LOT TWO (2) AND ALL OF LOTS THREE (3), FOUR (4), FIVE
(5), AND SIX (6), IN BLOCK TWENTY-FOUR (24), IN MRS. A.C. ALLEN=S ADDITION TO THE CITY OF HOUSTON,
HARRIS COUNTY, TEXAS NSBB AND VINCENT RODRIGUEZ, Appellees

 



 

On Appeal from the 157th
District Court

Harris County, Texas

Trial Court Cause No. 2006-69640A

 



 

MAJORITY   O P I N I O N








In this property-foreclosure case, Victor
Rodarte appeals the trial court=s summary-judgment orders in favor of
Investeco Group, L.L.C., Morad Mekhail, and Vincent Rodriguez.  Victor contends
that the summary-judgment orders were improperly granted because (1) he had
standing to prosecute the suit on his brother=s behalf; (2) one
summary-judgment order was based solely upon previously nonsuited claims; (3)
the appellee-movants failed to meet the required burdens of proof; and (4) the
trial court ignored Victor=s properly pleaded and proven affirmative
defenses.  We affirm the trial court=s judgment.

I.        Background

In 1990, Paul Sanchez (a.k.a. Polo
Sanchez) sold a piece of real property in Harris County to Eva Mendez.  Sanchez
and Mendez executed a promissory note for $110,000, which was secured by a deed
of trust granting Sanchez a lien on the property.  Mendez conveyed the property
in 1997 to Marleny Serna, who assumed the note.  In 1999, Serna conveyed the
property via a document entitled AAssumption
Warranty Deed@ to Domingo Gonzales and Gregorio Rodarte, Vincent=s brother, and
they assumed the note and executed a new deed of trust.  According to the
pleadings, Gonzales and Gregorio assumed the note under an oral partnership
agreement in which each agreed to pay one-half of the note=s payments and
other expenses.  Gregorio eventually assumed the entire note, allegedly buying
out Gonzales=s interest.    

According to the pleadings, in 2004
Gregorio had difficulty making the monthly payments and began searching for a
buyer for the property.  Around the same time, Sanchez appointed Vincent
Rodriguez as substitute trustee on the new deed of trust.  Gregorio allegedly
located a buyer, Gomar Properties, Inc., but then learned indirectly that
Rodriguez had taken action to foreclose upon the property.  In April 2004,
Gonzales allegedly approached RodriguezCin his capacity as
an agent to SanchezCto prevent the foreclosure, and the
parties reached an oral agreement (the ASanchez Agreement@) to that effect. 
The specific details of that agreement remain in dispute.  

In October 2004, Sanchez sold the note to
Investeco.  Investeco then appointed Morad Mehkail as the substitute trustee of
the deed of trust.  Mehkail executed a notice of foreclosure sale on the
property and sold the property to the highest bidder, Investeco.  








About two years later, Gregorio executed
special and general power-of-attorney documents appointing Victor as his agent,
and giving Victor authority to prosecute any and all legal actions relating to
the property on his brother=s behalf.

Victor filed suit against Investeco and
Mekhail alleging claims for damages including breach of contract, negligence,
improper foreclosure, and breach of fiduciary duty.  Under the heading AParties,@ Victor is
identified as Aan individual who . . . is the lawful agent of
real-party-in-interest, Gregorio Rodarte, with respect to all suits arising
from the real property in question.@  

Victor filed his first amended petition
against Investeco and Mekhail alleging claims for (among other things) breach
of contract, breach of fiduciary duty (against Mekhail in his capacity as
trustee only), and conversion; Victor effectively nonsuited the previously
asserted improper-foreclosure claims by omitting them from his amended
pleading.  After Victor filed his amended pleading, Investeco and Mekhail filed
counter-claims seeking a declaratory judgment with respect to proper notice of
foreclosure and the existence of surplus funds following foreclosure.

Investeco and Mekhail moved for summary
judgment on several claims, including their newly asserted counter-claims.  The
trial court granted summary judgment in favor of Investeco and Mekhail with
regard to the appellees= declaratory-judgment counter-claims, but
denied the remainder of the summary-judgment motion.








Victor filed a fourth amended petition in
June 2007, in which he added Gregorio and Gonzales as plaintiffs, and Sanchez
and Rodriguez as new defendants.  In July, Investeco and Mekhail filed a fourth
amended motion against Gonzales, Victor, and Gregorio seeking summary judgment
on the remaining claims for breach of fiduciary duty, tortious interference and
conspiracy.  Sanchez and Rodriguez subsequently joined Investeco and Mekhail in
their motion.[1] 
On August 17, the trial court granted the motion for summary judgment ordering
that Victor and Gregorio take nothing.  For unspecified reasons, the trial
court crossed out Gonzales=s name from the summary-judgment order. 
But two weeks later, Gonzales nonsuited his claims.  

On October 9, a suggestion of death was
filed with the trial court, noting that Sanchez had died on May 8, 2007.  The
suggestion further indicated that no administration of Sanchez=s estate was
pending.[2]


In December 2007, the trial court severed
the unresolved claims by Victor and Gregorio against Sanchez for breach of
contract, creating a final and appealable summary-judgment order.  Victor now
appeals from that order. 

II.      Analysis








Victor appeals adverse summary-judgment
orders on (1) his claims for tortious interference with contractual relations
and conspiracy against Investeco, Mekhail (individually) and Rodriguez; (2) his
claim for breach of fiduciary duty against Mekhail (as trustee); and (3) the
declaratory-judgment claims asserted against Victor by Investeco and Mekhail
regarding proper notice of foreclosure and the existence of proceeds from
foreclosure.  Victor contends that the summary-judgment orders were improperly
granted because (1) he had standing to prosecute the suit on his brother=s behalf; (2) the
summary-judgment order granting declaratory relief was based solely upon
previously nonsuited claims; (3) the appellee-movants failed to meet the
required burdens of proof; and (4) the trial court ignored Victor=s properly pleaded
and proven affirmative defenses.  

A.      Victor Rodarte=s Standing

Before considering Victor=s contention on
appeal that the trial court erred in granting summary judgment on the merits of
Victor=s claims, we must
consider whether the trial court erred in determining that Victor lacked
standing to assert these claims in the first place.  Victor contends that the
trial court erred in granting summary judgment on the ground that he lacked
standing to assert the claims of his brother Gregorio in his own name as a matter
of law.

Standing is a constitutional prerequisite
to maintaining suit.  See Tex. Ass=n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).  The absence of standing
may be raised by a motion for summary judgment.  See Bland Indep. Sch. Dist.
v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).  Under Texas law, a party has
standing to bring suit if (1) it has suffered a distinct injury, and (2) there
exists a real controversy that will be determined by the judicial determination
sought.  Brown v. Todd, 53 S.W.3d 297, 305 (Tex. 2001).  This second
component of standing refers to presentation of a justiciable issue.  State
Bar of Tex. v. Gomez, 891 S.W.2d 243, 245B46 (Tex. 1994). 
We review a party=s standing de novo and construe the
pleadings in favor of the plaintiff.  Tex. Dep=t of Transp. v.
City of Sunset Valley, 146 S.W.3d 637, 646 (Tex. 2004); Tex. Ass=n of Bus., 852 S.W.2d at
446..  








The appellees cite Elizondo v. Texas
Natural Resource Conservation Commission for the proposition that an agent
cannot bring suit on behalf of a principal in the agent=s own name under a
power of attorney.  974 S.W.2d 928, 931 (Tex. App.CAustin 1998, no
pet.).  In that case, Mildred Elizondo, Aindividually and
on behalf of those she is authorized to represent,@ filed suit in a
Travis County district court challenging the Texas Natural Resource
Conservation Commission=s final order regarding actions it was
taking to divert water.  Id. at 930.  The trial court sustained the
commission=s plea to the jurisdiction on three bases, one being
that Elizondo did not have standing to bring the action on behalf of the
affected landowners.  Id.  After the trial court sustained the plea,
Elizondo filed a APlaintiff=s [singular]
Notice of Appeal.@  Id. at 930B31.  The Austin
court of appeals held that (1) Elizondo=s appointment as
attorney-in-fact by power-of-attorney documents did not authorize her to bring
suit on behalf of the ten individuals in her own name in a representative
capacity; and (2) even if she were authorized to bring suit in a representative
capacity, she did not perfect appeal in that capacity.  Id. at 931.     

In reaching its decision, the court in Elizondo
relied on Tinsley v. Dowell, 87 Tex.  23, 26 S.W. 946, 948 (1894),
for the proposition that, in Texas, an agent cannot bring a suit in his own
name for the benefit of the principal.  Id.  Our court recently
distinguished Tinsley v. Dowell on that proposition in AVCO
Corporation v. Interstate Southwest, Ltd., 251 S.W.3d 632, 652B53 (Tex. App.CHouston [14th
Dist.] 2007, pet. denied).  As we stated in AVCO, Tinsley
involved an agent suing on his own behalf, not for the benefit of the
principal.  Id.  Here, as in AVCO, Victor specifically stated in
his pleadings that he asserted claims on his brother=s behalf, and
appellees do not dispute that Gregorio has a justiciable interest in these
claims.  See id. at 653.  

In addition, the scope of Victor=s authority under
the special and general powers of attorney is a question of capacity, not
standing.  Id. at 649, 653.  Standing is not to be confused with
capacity.  Id. at 649.  Capacity concerns A>a party=s personal right
to come into court,=@ while standing
concerns A>the question of whether a party has
an enforceable right or interest=.@  Id.  (quoting
Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 849 (Tex.2005)).  A
plaintiff with no legally cognizable interest in the outcome of the case lacks
standing to sue on its own behalf, but may be authorized to sue on behalf of
another.  See Nootsie, Ltd. v. Williamson County Appraisal Dist., 925
S.W.2d 659, 661 (Tex. 1996).  Appellees have not challenged Victor=s capacity to
bring suit on his brother=s behalf.








We conclude that Victor has standing as
Gregorio=s attorney-in-fact
to litigate his brother=s claims.  The trial court could not have
properly granted summary judgment on this basis. 

Appellees also contend that Victor
perfected appeal in his individual capacity only and does not have standing in
this court because he has no interest in the subject property.[3] 
While it is true that Victor did not state in the notice of appeal that he was
representing his brother, he has sued below only in a representative capacity;
there is no confusion as to his capacity before this court.  Having made a bona
fide attempt to invoke the appellate court=s jurisdiction
after prosecuting this suit solely in a representative capacity on his brother=s behalf, Victor
effectively has perfected an appeal.  See Warwick Towers Council of Co‑Owners
ex rel. St. Paul Fire & Marine Ins. v. Park Warwick, L.P., 244
S.W.3d 838, 839 (Tex. 2008) (per curiam).  We address that appeal on the
merits.

B.      Trial Court=s Summary-Judgment
Orders








In his first and second issues on appeal,
Victor contends that the trial court improperly granted the appellees= second amended
motion for summary judgment and fourth amended motion for summary judgment on
Victor=s remaining
claims.  Specifically, Victor argues that the trial court=s granting of this
summary judgment was in error because (1) the summary judgment related to
Victor=s notice-based and
surplus-based claims was improper for procedural reasons and should have been
denied; (2) the appellees failed to meet their evidentiary burden with respect
to their statute-of-limitations defense; (3) appellee Rodriguez failed to meet
his evidentiary burden with respect to his defenses to breach of oral
agreement; (4) the appellees failed to meet their evidentiary burden with
respect to Victor=s conspiracy claim; and (5) the appellees
failed to meet their evidentiary burden with respect to Victor=s
tortious-interference claim.  We consider each of these issues in turn.

1.       Standard of Review

We review the trial court=s grant of summary
judgment de novo. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150,
156B57 (Tex. 2004). 
In a traditional summary judgment, the movant bears the burden to show that
there is no genuine issue of material fact and that it is entitled to judgment
as a matter of law.  Tex. R. Civ.
P. 166a(c); Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985); Aguirre v. Vasquez, 225
S.W.3d 744, 750 (Tex. App.CHouston [14th Dist.] 2007, no pet.). 
Thus, when a defendant moves for traditional summary judgment, it must
conclusively negate at least one essential element of each of the plaintiff=s causes of action
or conclusively establish each element of an affirmative defense.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Shirvanian
v. DeFrates, 161 S.W.3d 102, 106 (Tex. App.CHouston [14th Dist.]
2004, pet. denied).  We take as true all evidence favorable to the non‑movant,
and we indulge every reasonable inference and resolve any doubts in the non‑movant=s favor.  Joe,
145 S.W.3d at 157; Aguirre, 225 S.W.3d at 750.  We review a summary
judgment for evidence that would enable reasonable and fair‑minded jurors
to differ in their conclusions.  Wal‑Mart Stores, Inc. v. Spates,
186 S.W.3d 566, 568 (Tex. 2006) (per curiam) (citing City of Keller v.
Wilson, 168 S.W.3d 802, 822 & 23 (Tex. 2005)).  

When, as here, the trial court does not
specify in its order the grounds on which it relied in granting summary
judgment, we must affirm the summary judgment if any of the grounds presented
is meritorious.  W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex.
2005); Chappell Hill Bank v. Smith, 257 S.W.3d 320, 324 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).  Thus, to prevail on appeal, Victor must show that each
of the appellees= summary-judgment grounds is meritless. See
Star‑Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).








2.       Notice of Foreclosure and Surplus Funds

Victor=s first issue on
appeal contends the trial court erred in granting the appellees= second amended
motion for summary judgment related to the notice of foreclosure and the
existence of surplus funds resulting from the foreclosure.  Specifically,
Victor contends that the trial court=s order was
improper because these claims had been nonsuited by omission in his first
amended petition.  As a result, Victor argues, there were no Alive@ claims related to
notice of foreclosure or surplus funds, rendering any judgment by the court
purely advisory.  Further, Victor asserts that his act of nonsuiting the claims
disposed of any justiciable controversy between the parties on these issues, precluding
the appellees= request for declaratory judgment.

Victor is correct that his act of omitting
these claims from his first amended petition effectively nonsuited the claims. 
J.M. Huber Corp. v. Santa Fe Energy Res., Inc., 871 S.W.2d 842, 844
(Tex. App.CHouston [14th Dist.] 1994, writ denied).  But after
Victor=s nonsuit, the
appellees filed counter-claims requesting declaratory judgment on both issues. 
If these claims were ripe for declaratory judgment, then the trial court
properly could award declaratory judgment on them through its summary-judgment
order.   








The Texas Declaratory Judgment Act is a
remedial statute the purpose of which is to afford relief from uncertainty and
insecurity with respect to rights, status, and other legal relations. See Tex.
Civ. Prac. & Rem. Code Ann. ' 37.002(b) (Vernon
2008); Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex.1995); WesternGeco,
L.L.C. v. Input/Output, Inc., 246 S.W.3d 776, 781 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).  We must construe and administer this statute
liberally.  See Tex. Civ. Prac. & Rem. Code Ann. ' 37.002(b); Bonham
State Bank, 907 S.W.2d at 467.  A court of record, acting within its
jurisdiction, has power to declare rights, status, and other legal relations
whether or not further relief is or could be claimed.  WesternGeco, L.L.C.,
246 S.W.3d at 781.  A declaratory judgment is appropriate only if a justiciable
controversy exists as to the rights and status of the parties and the
controversy will be resolved by the declaration sought.  Bonham State Bank,
907 S.W.2d at 467; WesternGeco, L.L.C., 246 S.W.3d at 781.  For a
justiciable controversy to exist, there must be a real and substantial
controversy involving a genuine conflict of tangible interests and not merely a
theoretical dispute.  Bonham State Bank, 907 S.W.2d at 467; WesternGeco,
L.L.C., 246 S.W.3d at 781.

Victor contends that he effectively
destroyed any real, justiciable controversy by nonsuiting these claims, leaving
only a theoretical dispute on the issue.  But the appellees argue that because
the claims were dropped voluntarily, they could be reasserted in the future. 
In Conte v. Greater Houston Bank, this court held that a justiciable
controversy existed sufficient to support summary judgment when a bank filed
suit seeking a declaration of its rights under a similar lien note.  641 S.W.2d
411 (Tex. App.CHouston [14th Dist.] 1982,  writ ref=d n.r.e.).  In
that case, this court held that, even though the maker had not yet refused a
demand by the bank, the determination of the parties= rights under the
note qualified as a Apresent justiciable controversy.@  Id. at
413B14.  Likewise, the
appellees in this case sought clarification through their counter-claim of
their rights and liabilities based on their conduct of providing notice of
foreclosure.  








Similarly, other courts have recognized
that a determination of rights to sales proceeds are a justiciable controversy
sufficient to sustain declaratory relief.  See, e.g., Nat=l Union Fire Ins.
Co. of Pittsburgh, Pa. v. Olson, 920 S.W.2d 458 (Tex. App.CAustin 1996, no
pet); Blackmon v. Parker, 544 S.W.2d 810 (Tex. Civ. App.CEl Paso), aff=d, 553
S.W.2d 623 (Tex. 1977).[4] 
In this case, the appellees= counterclaims regarding the notice of
foreclosure and the existence of surplus proceeds were justiciable
controversies sufficient to qualify for declaratory judgment.

a.       Notice of Foreclosure

In their counter-claim, the appellees
contend that proper notice of the foreclosure was given in accordance with the
deed of trust and the Texas Property Code.  The deed of trust required only
that the trustee give notice to Gonzales and Gregorio as required by law.  The
Texas Property Code requires only notice Aby certified mail
on each debtor who, according to the records of the mortgage servicer of the
debt, is obligated to pay the debt.@  Tex. Prop. Code
Ann. ' 51.002(b)(3)
(Vernon 2007 & Supp. 2008).  

Attached to their motion, the appellees
provided evidence of Gregorio=s address as provided to the trustee,
copies of the letter of notice and the notice itself, a receipt for having
mailed the notice to Gregorio by certified mail, and a copy of the return
card.  Victor offered no evidence or rebuttal to the appellees= evidence other
than to reurge that no justiciable controversy existed.  Based on the appellees= motion and the
accompanying evidence, we conclude that the appellees proved that proper notice
of the foreclosure was given as a matter of law.  The trial court did not err
in granting summary judgment on this issue.

b.      Surplus Proceeds          








After a valid foreclosure sale, Investeco
would be entitled to judgment for the amount of the note, interest, and
attorney=s fees, less the
amount received at the trustee sale and other legitimate credits.  Resolution
Trust Corp. v. Westridge Court Joint Venture, 815 S.W.2d 327, 330 (Tex.
App.CHouston [1st
Dist.] 1991, writ denied).  In the present case, the relevant deed of trust
establishes the following priority for the distribution of foreclosure
proceeds: (1) expenses of foreclosure, including a 5% commission to the
trustee; (2) payment to the beneficiary under the deedChere, Investeco by
assignmentCof the full amount of principal, interest, attorney=s fees, and other
charges due and unpaid; (3) payment of any amounts required to be paid by law
before payment to grantor; and (4) payment of any remaining balance to the
grantorCGregorio.

The appellees= summary-judgment
proof shows that Investeco=s bid at the foreclosure sale was
$123,757.00.  The appellees= attached proof further shows that the
outstanding debt on the note, expenses of the sale, as well as taxes on the
propertyCpaid by Investeco
before the saleCtotal $123,757.00.  Victor did not rebut
this summary‑judgment proof. Based on this record, there appears to be no
issue of fact concerning the existence of surplus proceeds after the
foreclosure sale.  The trial court did not err in granting summary judgment on
this issue.

Victor=s first issue on
appeal is overruled.

2.       Plaintiffs= Remaining Claims

In his second issue on appeal, Victor
challenges the trial court=s order granting the appellees= fourth amended
motion for summary judgment on the plaintiffs= remaining
claims.  At the time the motion was filed these claims included breach of oral
agreement by Sanchez;[5]
tortious interference with contractual relations by Investeco, Mekhail (as an
individual) and Rodriguez; breach of fiduciary duty by Mekhail (as trustee);
and conspiracy by Sanchez, Investeco, Mekhail and Rodriguez.  Appellees= motion sought
summary judgment on all of these claims except for the breach of contract claim
against Sanchez.  Victor generally contends that the trial court erred in
granting this summary judgment because the appellees failed to meet the
evidentiary burdens associated with their asserted defenses. 








The appellees sought summary judgment on
each of the plaintiffs= causes of action based on Victor=s asserted lack of
standing to sue on his brother=s behalf.  As discussed above, Victor did
not lack standing.  Therefore, Victor=s asserted lack of
standing was not a valid basis for summary judgment in favor of the appellees
on Victor=s claims for tortious interference with contractual
relations, breach of fiduciary duty, and conspiracy. 

The appellees also sought summary judgment
on all of the claims by Gregorio and Gonzales based on the statute of
limitations.  Gonzales has since nonsuited his claims against the appellees,
and thereafter ceased to be a party to this case.  Further, because Gregorio=s claims in this
case mirror exactly those asserted by Victor on his behalf, those claims relate
back to the originally filed claims and are not barred by limitations.  See Tex.
Civ. Prac. & Rem Code Ann. _ 16.068 (Vernon 2008); Johnston v.
Crook, 93 S.W.3d 263, 269 (Tex. App.CHouston [14th
Dist.] 2002, pet.  denied) (when second claimant=s cause of action
was identical to, and substituted for, original claimant=s, date of
original claimant=s filing controlled for purposes of
limitations). 

We will consider the other claims and
related defenses in turn.

a.       Breach of Oral Agreement

In his fourth amended petition, Victor
brought a single claim against Sanchez for allegedly breaching the oral Sanchez
Agreement.  Victor=s appellate brief states that summary
judgment on this claim was in error because the appellees did not meet their
evidentiary burden.  Apparently Victor has included these contract‑based
arguments as they relate equally to both the breach-of-oral-agreement claim and
the tortious-interference claim.  But Sanchez is not a party to this appeal
because the claims related to him were severed by the trial court=s order of
December 14, 2007.  Therefore, we will not consider this issue as it involves a
party who is not a part of this appeal and a claim which was not addressed in
the motion for summary judgment.








b.       Tortious Interference

In the court below, and again on appeal,
Victor claims that Investeco, Mekhail (individually), and Rodriguez tortiously
interfered with the Sanchez Agreement by orchestrating both the assignment of
the note and the foreclosure sale before Gregorio could close the sale with
Gomar.  A party alleging tortious interference must prove that a contract
subject to interference exists; that the alleged act of interference was
willful and intentional; that the willful and intentional act proximately
caused damage; and that actual damage or loss occurred.   Prudential Ins.
Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Four
Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., 217 S.W.3d 653, 668 (Tex.
App.CHouston [14th
Dist.] 2006, pet. denied).  

While disagreeing as to its exact terms,
validity, and enforceability, both parties generally concede that an agreement
existed between Sanchez, Gonzales, and Gregorio concerning the note and the
property at issue.  Victor claims that the Sanchez Agreement was based on
Sanchez=s promise to
refrain from assigning the note or foreclosing on the property, thereby
allowing Gonzales and Gregorio time to close on the sale to Gomar.  In consideration
for Sanchez=s promises, Gonzales and Gregorio promised to pay
Sanchez $9,000.00 by the end of June 2004.[6] 
The appellees, by contrast, concede that they were aware of an agreement
between the parties in which Sanchez promised not to foreclose on the property
as long as Gonzales and Gregorio paid the note in full by June 5, 2004. 
Because the exact terms are in dispute, a material issue of fact exists
regarding the nature of the Sanchez Agreement.  But it is clear that some type
of agreement was made.[7]








Victor=s fourth amended
petition cites two specific occasions of tortious interference by the
appellees: (1) taking an assignment of the note from Sanchez, and (2)
foreclosing on the property.  Victor claims that the damages suffered as a
result of these acts was the rescission of the Gomar sales contract.  Looking
at the first allegation of interference, it does not follow that the appellees= act of initiating
and ultimately completing the sale and assignment of the note proximately
caused the failure of Gomar sale.  Gonzales=s affidavit,
attached to Victor=s response to the appellees= motion, states
that Gregorio was ready to close on the Gomar sale until he learned of the
foreclosure from the title agent.  Therefore, it was the foreclosureCnot the assignment
of the noteCthat caused the rescission of the Gomar sale
contract.  Because the undisputed facts establish as matter of law that the
appellees= purchase of the note was not the proximate cause of
the complained-of damages, that could not constitute tortious interference with
the Sanchez Agreement.  See Prudential Ins. Co. of Am., 29 S.W.3d at 77;
Four Bros. Boat Works, 217 S.W.3d at 668.








While it is clear that the appellees= act of
foreclosing upon the property did prevent the Gomar sale from closing, it is
equally clear that the status of both the appellees and Sanchez had changed by
the time the foreclosure occurred.  Accordingly, one of two outcomes must have
occurred.  First, after taking assignment of the note Investeco assumed the
rights previously held by Sanchez as the holder of the note, and as the
beneficiary of the deed of trust.  Consequently, at the time of foreclosure,
Investeco was a party to the Sanchez Agreement and incapable of tortiously
interfering with it as a matter of law.  See Prudential Ins. Co. of Am.,
29 S.W.3d at 77B78; Holloway v. Skinner, 898 S.W.2d
793, 794B95 (Tex. 1995)
(Texas law has long recognized that the person who induces the breach of a
contract cannot be a contracting party).  Alternatively, if Investeco did not
take Sanchez=s place in the Sanchez Agreement based on the
assignment, then the Sanchez Agreement must have terminated by its own terms as
Sanchez lacked any authority to perform under the contract by preventing
foreclosure of the property.  In either case, Investeco could not have
interfered with the Sanchez Agreement by foreclosing upon the property as a
matter of law. 

Therefore the trial court did not err in
granting summary judgment on the tortious-interference claim.  We overrule
Victor=s issue on appeal.

c.       Breach of Fiduciary Duty

In his fourth amended petition, Victor
asserted a claim for breach of fiduciary duty as to Mekhail, claiming that
Mekhail, as trustee, breached a fiduciary duty to Gregorio by foreclosing on
the property despite his knowledge of an agreement with Sanchez not to transfer
the note or foreclose on the property in order to allow Gregorio to close with
the new buyer.  The appellees moved for summary judgment on this claim,
contending that there was no fiduciary duty as a matter of law.  On appeal,
Victor does not raise this issue as one on which the trial court erred in
granting summary judgment.  We find Victor waived any challenge to the trial
court=s ruling on his
fiduciary-duty claim by failing to raise or brief it on appeal.  See
Tex. R. App. P. 38.1. 
Accordingly, we affirm the granting of summary judgment on his claim for breach
of fiduciary duty in favor of the appellees.

d.       Conspiracy

Victor=s fourth amended
petition also asserted claims of civil conspiracy against Investeco, Mekhail,
Sanchez, and Rodriguez.  Specifically, Victor alleged that the defendants
conspired amongst themselves to tortiously interfere with the Sanchez
Agreement.








To establish civil conspiracy, the
appellant must show that the appellees had a meeting of the minds on an object
or course of action, and that one of the members committed an unlawful, overt
act in furtherance of the object or course of action.  Tri v. J.T.T.,
162 S.W.3d 552, 556 (Tex. 2005).  But since conspiracy is a derivative tort,
Victor must show that the appellees were also liable for some underlying tort
in order to prevail on this claim. See Baty v. ProTech Ins. Agency, 63
S.W.3d 841, 864 (Tex. App.CHouston [14th Dist.] 2001, pet. denied)
(citing Trammell Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 635 (Tex.
1997)).  Because we have already affirmed the trial court=s summary judgment
as to both tortious interference and breach of fiduciary duty, Victor is
without a tort claim upon which to base a cause of civil conspiracy.  Therefore
we overrule Victor=s issue on the summary judgment against
his conspiracy claim.  

IV.     Conclusion

Based on the foregoing reasoning, we
affirm the trial court=s judgment.

 

 

 

 

/s/      Jeffrey
V.  Brown

Justice

 

 

 

 

Panel consists of Justices Frost, Brown, and Boyce. (Frost, J.,
concurring)   









[1]  While Sanchez joined the motion for summary
judgment, that motion did not include the plaintiffs= claims for breach of contract against him, and those
claims were never added to the motion.





[2]  On October 12, Victor and Gregorio filed a fifth
amended pleading asserting the same claims as stated in their fourth amended
petition.  But this new pleading added Edward Sanchez, Athe only heir, known at this time, of the Estate of
Paul Sanchez decedent,@ as a defendant to the suit.  The pleading states that
it is Anecessary@ to
add Edward and the Estate of Sanchez in response to the previously filed
suggestion of death. 





[3]  It bears noting that the appellees filed their
counter-claims seeking declaratory judgment against Victor in an individualCnot representativeCcapacity. 
But unlike standing, objections concerning capacity may be waived.  Nootsie,
Ltd., 925 S.W.2d at, 662.  Since Victor never objected to the
counter-claims on this basis, this issue is waived for appeal. 





[4]  This court held that a declaratory-judgment action
regarding escrow funds from a foreclosure sale  does not qualify as a
justiciable controversy in National County Mut. Fire Ins. Co. v. Hood,
693 S.W.2d 638 (Tex. App.CHouston [14th Dist.] 1985, no pet.).  But our decision
in that case was based on the appellee=s
failure to include in the record summary-judgment evidence to support the trial
court=s required finding.  Id. at 639.





[5]  In their fourth amended petition, the plaintiffs
alleged breach of contract by Sanchez based on his alleged breach of the
Sanchez Agreement.  But perhaps because this claim did not involve Investeco
and Mekhail, it was not included in their fourth amended motion for summary
judgment on the plaintiffs= remaining
claims.  In its AFinal Summary Judgment,@ the trial court ordered that the plaintiffs Ashall take nothing on their claims against . . . Paul
Sanchez . . . ,@ apparently granting Sanchez more relief than he
requested. 





[6]  Victor=s
response to the appellees= motion for summary judgment included receipts for
payments totaling $9,000.00 made by Gonzales to Sanchez.





[7]  In their motion, and again on appeal, the appellees
contend that the promises which Victor claims form the basis of the Sanchez
Agreement are not in writing, and therefore violate the statute of frauds as
the contract would involve the sale of land.  See Tex. Bus. & Com.
Code Ann. ' 26.01 (Vernon 2009).  However, a contract held to be
unenforceable under the statute of frauds may nevertheless serve as the basis
for a tortious-interference claim.  See Juliette Fowler Homes, Inc. v. Welch
Assocs., Inc., 793 S.W.2d 660, 664 (Tex. 1990) (citing Clements v.
Withers, 437 S.W.2d 818, 821 (Tex.1969)).